## S. W. Swisher, Defendant in Error, v. The Inside Grocery & Market Company, Plaintiff in Error.

1. SALES—*when title to personal property passes.* The title to personal property passes by the delivery of possession.

2. STATUTE OF FRAUDS—*when promise within.* A promise by a corporation to pay the debt .of another is within the Statute of Frauds unless in writing.

3. CONTRACTS—*what essential to novation.* A novation is not created unless the old contract is extinguished.

Error to the Circuit Court of Vermilion county; the Hon. M. W. THOMPSON, Judge, presiding. Heard in this court at the May term, 1910. Reversed and remanded. Opinion filed October 18, 1910.

WHEELER, SILBER & ISAACS and WILLIAM L. CUNDIFF, for plaintiff in error; FREDERICK D. SILBER, of counsel.

LINDLEY, PENWELL & LINDLEY, for defendant in error.

MR. PRESIDING JUSTICE PUTERBAUGH delivered the opinion of the court.

Upon a trial of this cause before the court, the plaintiff recovered judgment against the defendant for the sum of $1,800 and costs. To reverse such judgment this writ of error is prosecuted by the defendant.

The first count of the declaration alleges that the plaintiff was, on July 14, 1909, possessed of the legal title to certain merchandise located in Danville, and known as the "Carter & James stock;" that the plaintiff had the legal title to the same as security for $2,000, being the balance due him from one Jackman on account of the purchase price of said merchandise; that the defendant corporation was desirous of purchasing said merchandise, and proposed that if the plaintiff would convey the same to Jackman, and Jackman would deliver it to the defendant, then the defendant would assume and pay to the plaintiff the indebtedness aforesaid; that the plaintiff did convey said merchandise to said defendant by bill of sale; that Jackman likewise did deliver said merchandise to defendant, all of which was done in reliance upon and in accordance with said promises; that the defendant then and there received said merchandise and has remained in possession thereof and become liable to pay to the plaintiff the said sum of $2,000 and interest.

The second count alleges that Jackman claimed to be the owner of the merchandise, subject to the lien of the plaintiff; that Jackman was indebted to the defendant; that the defendant proposed to Jackman that if he would deliver said merchandise to said defendant and procure the legal title in defendant, then

defendant would cancel the indebtedness of Jackman and assume and pay the sums due from Jackman on account of the purchase of the merchandise, and that Jackman accepted said proposal and did deliver the merchandise, and executed a bill of sale therefor. The third count alleges that Jackman was indebted to the defendant corporation in the sum of $5,000 for shares of the capital stock subscribed by him, and that at a regularly called meeting of the defendant there was legally adopted the resolution "Exhibit B"; that said merchandise therein mentioned is the same described as belonging to the plaintiff; that the plaintiff, relying upon the promises in said resolution contained, did execute and deliver to the defendant a bill of sale to said merchandise, and Jackman delivered the merchandise to the defendant; that the defendant received and kept the merchandise and the bill of sale, by means whereof it became liable to pay to the plaintiff said sum of money. The fourth count alleges that the plaintiff executed and delivered to the defendant a bill of sale, whereby in consideration of $2,000 to be paid to him by the defendant, he sold and delivered unto the party of the second part the stock of merchandise in question; that the defendant accepted and retained said instrument and merchandise, and became liable to pay the plaintiff the sum of $2,000. "Exhibit B" referred to in the third count, is as follows:

"Resolved, that whereas, W. Y. Jackman and W. S. Grimes are each possessed of a stock of groceries, fixtures, merchandise and appurtenances, each of which has been carefully appraised, and each of which is worth $6,000, and whereas said stock and property are desired by the corporation; and whereas said owners are willing to sell same to this corporation at the appraised value and receive therefor respective credits upon their stock subscriptions; now, therefore, be it

"Resolved, 1. That the corporation purchase from W. Y. Jackman all merchandise, fixtures and appurtenances included in what is known as the Carter &

.THIRD DISTRICT—OCTOBER, 1910.    189

Swisher v. The Inside Grocery & Market Co., 158 Ill. App. 186.

James stock and assume all outstanding accounts due
thereon, at the sum of $5,000; and that the corpora-
tion pay therefor by giving credit to said W. Y. Jack-
man of $5,000 upon his stock subscription herein; 2.
That the corporation purchase from W. S. Grimes all
merchandise, fixtures and appurtenances included in
the business formerly at Oakwood, Illinois, and pay
therefor by assuming all merchandise accounts due
thereon and by allowing to said W. S. Grimes a credit
upon his stock subscription herein of $5,000; 3. That
upon the receipt of said property the President and
Secretary issue and deliver to said W. S. Grimes
and W. Y. Jackman respectively, certificates of shares
of stock equalling at their face value the respective
amounts of stock thus paid for by said respective par-
ties by said respective credits.''

With the declaration the plaintiff filed an affidavit
of merits stating that his demand was for the balance
due on the purchase price of the stock of merchandise
referred to in the declaration. The defendant there-
upon filed an affidavit setting out the following spe-
cial defenses: That the corporation was not liable to
Swisher, as charged; that the corporation, as such,
had no capacity to enter into said alleged contract at
the time alleged in the declaration; that the claim of
the plaintiff, if any, was against the officers, directors
and stockholders of the corporation, and that the claim
of the plaintiff was barred by the Statute of Frauds.

The evidence discloses that on July 3, 1909, the
plaintiff Swisher was the owner of a stock of groceries
in Danville, Illinois, which he sold to one Jackman.
Jackman paid the purchase price, except the sum of
$2,000, took possession of the stock, and thereafter,
until July 14, 1909, conducted a grocery business in
the regular way, buying and selling merchandise. A
bill of sale was executed by Swisher at the time of
the purchase, but retained by him. Thereafter, Jack-
man, together with Grimes and Jackson, took steps
for the formation of the defendant corporation, with
a capital stock of $15,000, consisting of 300 shares of

190     APPELLATE COURTS OF ILLINOIS.

Swisher v. The Inside Grocery & Market Co., 158 Ill. App. 186.

$50 each. It was agreed among them that Jackman was to turn over to the corporation the stock of groceries in question, in exchange for 100 shares of the capital stock; that Grimes was to turn over a similar stock of groceries owned by him, at Oakwood, Illinois, in payment for 100 shares of the capital stock; that 2 shares of the capital stock were to be given to Jackson as compensation for services rendered the corporation, and the remaining 98 shares of the capital stock were to be subscribed for equally by Jackson and Grimes. Jackman, learning that the plaintiff claimed to hold the title to the Danville stock of goods, as collateral security for the payment of the balance due thereon, advised the plaintiff that the corporation would assume and agree to pay such indebtedness. The plaintiff agreed to the transfer of the stock of groceries to the corporation, but claims that he never released Jackman from liability for the balance due to him. Application was thereafter made for a license to organize the proposed corporation, and the same was issued July 19, 1909. On July 14, the plaintiff, Jackman and Grimes, the subscribers to the capital stock of the defendant, held a meeting at which they were elected directors. They then as directors adopted the resolution hereinbefore set out as "Exhibit B." At the same meeting a resolution was adopted for the issuance to Jackson of 2 shares of capital stock for services rendered and to be rendered by him. On the same day the plaintiff delivered to Jackman the bill of sale for the stock of goods in question, and Jackson gave him a check for $200, which was afterwards paid, signed "Inside Grocery & Market Co. by W. Y. Jackman." One hundred and forty-nine shares of capital stock of the defendant were thereupon issued to Jackman. The report of the commissioners licensed to organize the corporation was executed and sworn to on that day, and forwarded to the secretary of state, who on July 19, 1909, issued to the corporation a cer-

tificate of corporate organization, which was recorded as required by law, on August 14, 1909. On August 2, 1909, meetings of the stockholders and directors of the corporation were held, at each of which resolutions were adopted ratifying the acts of the stockholders and directors at the meeting of July 14. In November, 1909, the defendant corporation made an assignment for the benefit of its creditors, whereupon the plaintiff instituted the present suit for the balance due him of $1,800 upon the purchase price of the stock of goods in question, and a similar suit against Grimes and Jackman upon the same alleged indebtedness.

We are of opinion that under the foregoing facts, which are practically undisputed, the title to the stock of merchandise passed to Jackman upon the delivery of the possession of the same to him by the plaintiff on July 3, 1909. Jackman did not testify in the case, and the testimony of the plaintiff himself tends to show that the sale was absolute and not conditional. Whatever may have been his belief as to the effect of the retention by him of the bill of sale, under the circumstances the delivery of the possession of the property was sufficient to pass the title, followed as it was by the continuance of the possession for over ten days and the sale of stock by Jackman in the regular way. The balance due upon the purchase price constituted but an unsecured indebtedness from Jackman to the plaintiff, for which the former continued to be liable. We regard as immaterial whether the defendant corporation was a corporation *de facto* or *de jure* at the time of the passage of the resolution in question, for the reason that its alleged agreement to pay the indebtedness of Jackman to the plaintiff was obnoxious to the Statute of Frauds. The indebtedness of Jackman to plaintiff was never extinguished. Plaintiff admits that he never released Jackman, and the fact that he sued Jackman on that same debt is conclusive evidence of that fact. The Jack-

man debt being and continuing in existence, the alleged promise of the corporation was merely to pay the debt of Jackman to the plaintiff. It was a promise to pay the debt of another, which, to be valid, should have been in writing and signed by the corporation. The original undertaking was Jackman's agreement to pay the plaintiff $2,000; the collateral undertaking was the alleged agreement of the corporation to pay the Jackman debt. It cannot be held that there was a novation, one of the essentials of which is an extinguishment of the old contract. Hayward v. Burke, 151 Ill. 121. It is essential that the parties to the old contract either expressly or impliedly consent to the substitution of the new one. Bank v. Kirkwood, 172 Ill. 563. The alleged agreement of the corporation was within the Statute of Frauds and non-enforceable. Eddy v. Roberts, 17 Ill. 504; Netterstrom v. Gallistel, 110 Ill. App. 352; Haines v. Cox Bros., 109 Ill. App. 15; Chicago Lumber Co. v. Miller, 219 Ill. 79.

The fourth, fifth and eighth propositions of law submitted by the defendant, were in harmony with the foregoing views, and should have been held to be the law applicable to the facts in the case.

The judgment of the Circuit Court is reversed and the cause remanded.

*Reversed and remanded.*