## In re DE RAN.

### In re FREMONT LUMBER CO.

(Circuit Court of Appeals, Sixth Circuit.   October 7, 1919.)

#### No. 3240.

1. BANKRUPTCY ⚫═►372—RECORD INSUFFICIENT TO SHOW CLOSING OF ESTATE.
    Record of the District Court in bankruptcy, as sent up on petition to revise an order made by it for repayment by the trustee's attorney of fees allowed and paid to him, *held* not to show that the estate had been fully administered and closed prior to the order, especially in view of the court's affirmative finding that it had not been fully administered.

2. BANKRUPTCY ⚫═►446—SCOPE OF REVIEW ON PETITION TO REVISE.
    The Circuit Court of Appeals, on petition to revise an order of the bankruptcy court, cannot determine controverted questions of fact, but is limited to review of questions of law.

3. BANKRUPTCY ⚫═►372—CLOSING OF ESTATE NOT SHOWN BY RECORD OF BANKRUPTCY COURT.
    The closing of bankrupt's estate is not established by entry on the referee's book, "Order allowing account and discharging trustee filed;" the record of the bankruptcy court not showing that the referee's record was transmitted to the court, or its clerk, as required by Bankruptcy Act, § 39, subd. 7 (Comp. St. § 9623), and section 42 (section 9626), and the record supporting a presumption that, had the closing order been brought to the court's attention, the court would, as authorized by section 2, subds. 8 and 10 (section 9586), have returned to the referee his record for further proceedings.

4. BANKRUPTCY ⚫═►482(1)—ALLOWANCE BY REFEREE TO TRUSTEE'S ATTORNEY SUBJECT TO RE-EXAMINATION.
    Allowance by referee in bankruptcy of the account of the trustee's attorney for services and expenses is not a final adjudication, but is an administrative order, subject any time before closing of estate, to re-examination and disposition according to the equities.

5. BANKRUPTCY ⚫═►482(1)—ALLOWANCE TO ATTORNEY MAY BE SET ASIDE BY COURT.
    The bankruptcy court, being one of equity, can set aside an allowance for services and expenses of attorney of one of its officers, when shown that it was procured through fraud.

6. BANKRUPTCY ⚫═►482(1)—RE-EXAMINATION OF ALLOWANCE TO TRUSTEE'S ATTORNEY NOT IN REFEREE ONLY.
    Claim of attorney for trustee in bankruptcy having in accordance with existing custom, though not required by any rule, been certified by the referee to the District Judge, with recommendation, and he having allowed it, jurisdiction to re-examine it is not with the referee alone.

7. BANKRUPTCY ⚫═►482(1)—RE-EXAMINATION OF ALLOWANCE OF CLAIM ON JUDGE'S MOTION.
    A bankruptcy court may of its own motion institute proceeding for re-examination of allowed claims of attorney for trustee.

<hr>

⚫═►For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

8. BANKRUPTCY ⚖⇒482(1)—PROCEDURE ON RE-EXAMINATION OF ALLOWANCE TO REFEREE'S ATTORNEY.

A plenary suit, as distinguished from a summary proceeding, is not necessary for re-examination, on the ground of fraud, of the allowed claim for services and expenses of the attorney for the referee in bankruptcy.

9. JUDGES ⚖⇒30—DESIGNATION OF JUDGE OUT OF DISTRICT ON DISQUALIFICATION OF TRIAL JUDGE.

Under Judicial Code, § 21 (Comp. St. § 988), on disqualification of the trial judge for bias or prejudice, it is not necessary, for designation of another judge outside the district, that all the judges of the district be disqualified.

10. BANKRUPTCY ⚖⇒482(1)—RIGHT TO COMPENSATION OF ATTORNEY FOR TRUSTEE.

Attorney for trustee in bankruptcy is not entitled to receive or retain compensation from the estate; he while so acting, having really worked against the interests of the estate and its creditors.

Petition to Revise an Order of the District Court of the United States for the Northern District of Ohio; John M. Killits and Arthur J. Tuttle, Judges.

Petition of Hal C. De Ran to revise an order of the District Court in the case of the Fremont Lumber Company, bankrupt. Order affirmed.

W. H. Boyd, of Cleveland, Ohio (David B. Love, of Fremont, Ohio, and E. B. King, of Sandusky, Ohio, of counsel), for petitioner.

Harry W. Morgan, of Toledo, Ohio (Brown, Geddes, Schmettau & Williams and Smith, Beckwith & Ohlinger, all of Toledo, Ohio, of counsel), for respondent.

Before KNAPPEN and DENISON, Circuit Judges, and HOLLISTER, District Judge.

KNAPPEN, Circuit Judge. The Fremont Lumber Company (a corporation) was adjudicated bankrupt by the court below on June 8, 1908, and a general reference made. On the 26th of the same month De Ran was appointed attorney for the trustee in bankruptcy, one Eisenhour. On September 28, 1910, De Ran's account for services and expenses as such attorney from June 26, 1908, to July 27, 1910, was allowed at $1,336.05, and payment made in due course. On November 2, 1917, Judge Killits, on his own motion, instituted a formal investigation into the administration of the bankrupt's estate by citing the referee and the trustee to appear before him, later subpoenaing De Ran and others. As the result of this investigation, the judge made, on January 9, 1918, certain findings which, in connection with the amendment of February 16, 1918, may be summarized as follows:

(1) That while De Ran was assuming to act as attorney for the trustee, for which services the compensation in question was allowed him, he, in fraud of creditors and in violation of his duty as attorney for the trustee, prosecuted two claims in favor of one Christy against the estate, aggregating more than $10,000, and caused Christy to draw dividends on those claims, having at the time knowledge that one of them, aggregating more than $5,000, was not a primary liability of

the bankrupt and under no circumstances allowable as such, and that as against the other, also allowed in the sum of more than $5,000, with knowledge that Christy had previous to the bankruptcy taken an assignment of the judgment against the principal debtor on said claim, the value of which was sufficient to reduce the general claim to $140.

(2) That while so acting as attorney for the trustee, and during the period covered by said allowed compensation, De Ran procured an appraisement of the assets of the bankrupt's estate at $20,888, with knowledge that a state court, which had jurisdiction over a receivership prior to the bankruptcy, had appraised the assets at upwards of $60,000, and by withholding such knowledge procured the referee to approve a sale of such assets upon the second appraisement, at a trifle more than $20,000, to one Zurhorst, the latter acting therein for certain parties including De Ran, the assets so sold being then fairly worth more than $45,000; that De Ran acquiesced and participated in the fact that such purchasers of the bankrupt's assets were exonerated from paying cash for their purchases and were permitted to distribute the purchase price over a period of four years without interest (which would have amounted to more than $1,600), and to retain the cash proceeds of the purchase of the estate subject to general distribution.

(3) That, had De Ran's conduct been brought to the attention of the bankruptcy court when his claim for allowance for services and expenses as attorney to the trustee was presented, it would have been altogether disallowed.

(4) That in conscience and equity De Ran ought not to be permitted to retain the compensation so paid to him as attorney for the trustee.

De Ran was accordingly ordered to show cause why he should not repay the $1,336.05 so paid him, with interest. Another order seems also to have been entered requiring De Ran to show cause why he should not be disbarred from practice, a committee being appointed to prosecute such proceeding. Thereafter Judge Killits, on March 4, 1918, entered an order reciting his own disqualification to sit in any matter in the case to which De Ran was a party defendant or a respondent to any issue raised therein, and directing notice accordingly to the senior Circuit Judge. Judge Tuttle was accordingly designated on the 16th of the same month to hear and determine all such matters and issues.[1] After hearing upon testimony and arguments of counsel, an order was entered by Judge Tuttle on April 27th which, as modified by action of July 17th following, found that the allegations contained in Judge Killits' rules of January 9th and February 16th, respectively were true, and requiring De Ran forthwith to pay the $1,336.05, with interest at 6 per cent. per annum from September 26, 1910, to a new trustee of the bankrupt estate, who had been elected upon the resignation of the former trustee pending the hearing mentioned. This proceeding is brought under section 24b of the Bankruptcy Act (Act

---

[1] Petitioner claims to have tendered for filing an affidavit of Judge Killits' disqualification just before his entry mentioned. This affidavit has not been sent up, and apparently was not filed. The practice as to disqualification would have been the same, had affidavit been filed as under the judge's certificate. Judicial Code (Act March 3, 1911, c. 231) § 21, 36 Stat. 1090 (Comp. St. § 988).

July 1, 1898, c. 541, 30 Stat. 553 [Comp. St. § 9608]) to review that order and judgment.

The grounds relied upon for reversal, as we understand them, are these:

1. That the District Judge had no jurisdiction to make the orders complained of because—

(a) The estate had been fully administered and duly closed more than two years before the proceeding in question was instituted.

(b) The referee had sole jurisdiction over the allowance of petitioner's account as attorney for the trustee, that no creditor or person interested had ever objected to such allowance or applied for relief therefrom, that Judge Killits had no authority on his own motion to so interfere, and that the allowance of petitioner's claim was thus a final adjudication thereon.

(c) That the action of the District Court here complained of was barred both by laches and by statutes of limitation.

2. That if the subject-matter is open to trial, it can be litigated only in a plenary suit.

3. That Judge Tuttle's designation was invalid.

4. That no ground is stated in the rule to show cause empowering the court to enter the order complained of, and the grounds stated are contrary to the facts and the law, as shown by the record.

[1-3] 1. Was the estate fully administered and actually closed prior to November 2, 1917? So far (according to the record here) as shown by the records in the District Court, the immediately pertinent proceedings were these: The referee's record shows: January 7, 1911, final report of trustee filed; cash on hand $3,754.21. On the 10th, amended proof of First National Bank, Fremont, filed $2,888.93. On the 11th, notified creditors of meeting January 26th, 10 o'clock a. m., for final dividend. On the 26th, hearing on final distribution. On the 30th, list of creditors and dividends recorded and placed in hands of trustee. On the 30th, memorandum of bankruptcy statistics filed. During the year 1911 there are no entries on the record kept in the District Court, and after 1911 no entries upon the records of either court (as appearing in the District Court clerk's office) until 1914, when these entries by the referee appear: May 12, record and bankruptcy statistics forwarded to clerk. May 16, record of proceedings returned to attach distribution account of trustee, this latter evidently in response to the entry on the court's record of May 15, 1914, "letter directing the trustee to report forthwith filed." The next entries by the referee are these: February 6, 1915, distribution account filed by trustee sent to Toledo, February 18, record of proceedings forwarded to Toledo. On the District Court records appear the following: February 8, 1915, trustee's final report received from referee and filed. On the 19th, referee's record of proceedings filed. March 25th, objections of National Bank of Commerce, Detroit, Mich., to confirmation of trustee's report filed. July 2, order instructing referee in regard to trustee's report. Same date, certified copy to F. A. Seager [the referee]. These instructions appear to be a direction to—

"cause to be transmitted to the court the trustee's report of distribution of the first dividend under date of August 17, 1909, and the final report of the

trustee preliminary to the declaration of the final dividend, said report being apparently dated January 17, 1911. The referee will see that these reports are severally made a part of the files of this cause on or before the 30th of July, 1915."

Neither the entries by the referee nor the record of the District Court show that this instruction was complied with. There are no further "entries by referee" shown by the record as sent up by the District Court. On that court's records the next entry is that of November 2, 1917, recording the issue of citation to Eisenhour and Seager. On the face of this record it seems plain that the estate was not closed in January, 1911, as petitioner contends, even if it was then thought ripe for closing. It was never closed unless, as petitioner further contends, such closing was effected on February 27, 1915, through an alleged order of the referee allowing the trustee's account and discharging that officer. As already said, no such order appears of record in the District Court so far as shown by the record in the instant proceeding.

In the proceeding before Judge Tuttle, in which the order here under review was made, the respondent (petitioner here) presented by answer the defense, among others, that the referee had on February 27, 1915, as shown by his records and the files of the court, approved the trustee's final account and duly and regularly discharged the trustee and finally closed the estate. In our opinion Judge Tuttle's order under review naturally implies a denial of the asserted closing. Such implication is made clear by reference to that judge's order of April 27, 1918 (the date of his order requiring petitioner to repay the $1,336.05 in question), which latter order accepted the resignation of Trustee Eisenhour and appointed as receiver the present trustee, Isenberg, and in which order Judge Tuttle expressly declared:

"That the order and findings made by this court on April 1, 1918, and filed with the clerk of this court on April 2, 1918, be and the same are hereby in all respects approved and confirmed."

The order referred to by Judge Tuttle is an order made by Judge Killits revoking petitioner's appointment as attorney for the trustee, disallowing, as against receipts in the trustee's final reports, certain claims for credits amounting to $1,356.47, which included a small dividend to each of two creditors, claimed not to have been paid, and directing the then Referee Belford to readminister the estate, and in that connection to consider the propriety of instituting certain actions on account of alleged fraudulent payments or misappropriations from the estate, and expressly finding that the estate—

"has never been lawfully closed as provided by law, there having been no lawful approval of the proceedings thereunder nor of the final account of distribution of the trustee in bankruptcy; said administration not having been completed according to law."

We think the record not open to the criticism that Judge Tuttle's findings in this or any other regard were based otherwise than upon evidence presented to and weighed by him in connection with the arguments of counsel. This being so, the effect otherwise to be given his finding is not destroyed by any disqualification on Judge Killits'

part to so adjudicate. In this proceeding we cannot determine controverted questions of fact. We are limited to a review of questions of law. Duryea Power Co. v. Sternbergh, 218 U. S. 299, 31 Sup. Ct. 25, 54 L. Ed. 1047; In re Stewart (C. C. A. 6) 179 Fed. 222, 102 C. C. A. 348; In re Holden (C. C. A. 6) 203 Fed. 229, 121 C. C. A. 435. In the face of this finding, and as the record in the District Court stands, the contention that the estate had been closed must be rejected unless, as petitioner contends, the contrary is affirmatively established by an entry appearing on the then referee's book, as follows: "Feb. 27 [1915]. Order allowing account and discharging trustee filed" which record petitioner asks this court to receive as conclusive evidence of the fact stated, in connection with an affidavit of the then referee that such order was made and entered by him on his docket as referee in the bankruptcy proceeding on the date there shown, and that immediately thereafter he mailed the original to the clerk of the District Court. By amendment to the petition for revision in the instant case it appears that this record book was offered in evidence on the hearing below; and the answer to that amendment asserts that—

"The evidence presented on the hearing on the merits of this matter * * * impeached, contradicted, and qualified the alleged record of the referee in bankruptcy, of which one of the exhibits to said amendment to said petition to revise purports to be a copy and said evidence destroyed the alleged legal effect of said alleged record of said referee."

In this state of the record here we think the referee's record book cannot be held to prove itself conclusively, and as matter of law. Subdivision 7 of section 39 of the act (section 9623) requires referees to "transmit to the clerks the records, herein required to be kept by them, when the cases are concluded," and subdivision (c) of section 42 (section 9626) expressly requires that the book or books containing a record of the proceedings before the referee shall on the conclusion of the case before that officer be not only certified to by him, but transmitted with such papers as are on file before him to the court of bankruptcy, there to "remain as a part of the records of the court." It is not claimed that the book was so transmitted, but on the contrary, it seems to have always remained in the personal custody of the then referee; he contenting himself with transmitting a certified copy of so much of the book as pertains to the estate in question, in accordance with what he says was his practice. As already said, there is no competent record evidence that the item in question ever went to the clerk's office (there is not even a notation to that effect in the referee's book).[2] The law does not contemplate that so important an action as the closing of an estate and the discharging of a trustee should rest in personally retained records. The affidavit referred to is plainly incompetent and cannot be received against respondent's objection. Its receipt would result in impeaching the judgment of the trial court by evidence which, so far as appears by the record here, was not before that court; for it was not referred to in the petition for revision

[2] A copy of the referee's entry (if filed in the clerk's office), certified by the clerk, would have been competent evidence under our rule 34 (202 Fed. xxi, 118 C. C. A. xxi).

or in the amendment thereto and, so far as this record shows, is no part of the records of the trial court.

We may also suggest, without answering, the query whether a mere signing and filing of an order closing an estate without extending it in permanent form on a docket or journal complies with section 42a of the Bankruptcy Act, which requires that the referee's record shall be kept "as nearly as may be in the same manner as records are now kept in equity cases in Circuit Courts of the United States."

But, assuming that the referee's order of February 25, 1915, was actually made and entered in his docket on that date as completely as is contemplated by official form No. 51, we think the estate is not shown to have been thereby effectually closed, not only for lack of competent evidence that it was reported to the court, but for this further ·consideration: Assuming (without so deciding) that under section 55 of the Bankruptcy Act (section 9639) a creditors' meeting following the distribution account of February 6, 1915, as distinguished from the dividend account of January 7, 1911, was not required (although we are disposed to think it was required, it was not had), and thus that the estate was on February 25, 1915, ripe for the referee's order in question, we think the record further negatives the idea of an effective closing on that date. Such closing involves a proposition of fact. Whatever might have been the intention of the referee, his action was not final until in some way acquiesced in by the District Court.

Assuming, for present purposes, that such acquiescence would ordinarily result from the filing in the District Court clerk's office of an order discharging the trustee and approving his account, without seasonable action to review, yet the court had power to determine for itself, in the first instance, the question of closing the estate. The court had shown itself interested in the administration by directing the trustee on May 15, 1914, to report forthwith. It was not until nearly 9 months later that the trustee's distribution account was filed with the clerk of the District Court, followed 11 days later by the referee's record of proceedings. In the absence of further report by the referee of any action by him, and after a creditor had made objection (directly to the District Court) to the confirmation of the trustee's report, the referee was directed to transmit to the court the two trustee's reports before referred to. The record does not show that either of these reports was ever filed in the District Court. Subdivision 8 of section 2 (section 9586) authorizes the court to reopen an estate whenever it appears it was "closed before being fully administered." This authority could doubtless be exercised ex parte. Subdivision 10 of that section empowers the courts to "return with instructions for further proceedings, records * * * certified to them by referees." The record here would support, rather than repel, a presumption that the referee's record of February 25, 1915, would have been returned to him for further proceedings, and the order closing the estate set aside, had the closing order been brought to the court's attention by its filing in the clerk's office. Under these circumstances, and in view of the affirmative findings of fact below (which the evidence tends to support) that the estate had not been fully administered, we think the

defense that the estate had been closed before the proceeding here in question was instituted is not established by the record before us.

[4, 5] 2. We see no force in the contention that the referee's allowance of petitioner's account amounted to an adjudication which the District Judge had no jurisdiction to set aside. Had the claim been that of a creditor it would, under section 57k of the act (section 9641), be subject to reconsideration and rejection, in whole or in part, at any time before the estate was closed. But while the claim was not that of a creditor, and so not subject to the statute, it was, nevertheless, being an administrative order, subject at any time before the closing of the estate to re-examination and to such disposition as the equities of the case require. In re Ives (C. C. A. 6) 113 Fed. 911, 51 C. C. A. 541; Davidson v. Friedman (C. C. A. 6) 140 Fed. 853, 72 C. C. A. 553. A court of bankruptcy is a court of equity (Bardes v. Bank, 178 U. S. 524, 535, 20 Sup. Ct. 1000, 44 L. Ed. 1175), and has undoubted jurisdiction to set aside an allowance for services and expenses of an attorney to one of its officers, when it satisfactorily appears that the allowance was procured through fraud. The allowance of the claim was thus not a final adjudication.

[6] The proposition that the referee alone had jurisdiction to re-examine the claim does not impress us. It is not accurate to say that the action allowing the claim was solely that of the referee; in a much more proper sense it was directly the action of the District Judge. It is shown not only by the referee's record, but by that in the office of the clerk of the District Court, that petitioner filed with the trustee a claim for $1,567.30; that the referee, in accordance with a then existing practice, certified the claim to the District Judge, with recommendation that it be allowed at $1,536.05; that the judge allowed the claim at $1,356.05.[3] The referee seems to have made no further order. It is immaterial that this practice of submitting to the District Judge directly the allowance of claims of this nature, instead of having the allowance made by the referee subject to review under the act, was (as petitioner contends) not required by any actual rule of the District Court. It was apparently based upon an existing practice, presumably required by the District Judge. The latter had complete authority, notwithstanding the general reference, to take to himself the allowance of claims of this nature. The action had was as effectively that of the judge as if had under a positive order withdrawing that subject from the referee's consideration, or as if the referee had in the first instance allowed the claim, and the matter then been brought before the District Judge for review.

The estate not having been closed, the statute of limitations does not apply. The record precludes any basis for claim of laches in re-examining the account.

[7, 8] 3. Equally without merit, to our minds, are the contentions that the District Court had no jurisdiction sua sponte to institute the proceeding under review, and that, in any event, a plenary suit, as

3 As shown by the District Court's record, or at $1,536.05 as shown by the referee's record. Both court and counsel seem to treat the actual allowance as $1,336.05.

distinguished from a summary proceeding, was necessary. We have lately had occasion in two cases to consider the jurisdiction of a court of bankruptcy to proceed on its own motion to correct an erroneous allowance or a fraudulent action. International Corporation v. Cary, 240 Fed. 101, 104, 105, 153 C. C. A. 137; In re Veler, 249 Fed. 633, 644, 161 C. C. A. 543. In the Cary Case, in sustaining the action of the referee (under section 57k of the act) in setting aside the allowance of a claim on his own motion, we said:

"While it is probably the better practice generally for the referee to act upon petition of the trustee or of creditors, and, in case the information comes in the first instance to the referee, to direct the trustee to institute proceedings for re-examination, yet we cannot think that the referee is without jurisdiction to act, as in the case in question, upon his own motion. There may or may not have been reason for proceeding sua sponte, but the presence or absence of such reason is not fatal to jurisdiction. A court of bankruptcy is a court of equity (Bardes v. National Bank, 178 U. S. 524, 525, 20 Sup. Ct. 1000, 44 L. Ed. 1175); the proceedings therein are more summary than in ordinary suits; * * * and it cannot be that an equity court, acting under such summary practice, is powerless, in the interests of justice, on its own motion to take steps to correct what it believes to have been an erroneous action had upon insufficient knowledge."

In the Veler Case, where the District Court, in a proceeding instituted sua sponte, held the original petitioning creditors liable for receiver's certificates, debts and later costs, on the ground that the receivership was fraudulently had, we said (speaking through Judge Denison):

"The District Judge became suspicious that he had been imposed upon. It was not only his clear right, but his duty, to proceed upon his own motion into a thorough inquiry upon the subject."

In that case, in rejecting a contention that a plenary action at law before a jury was essential to relief, it was said (249 Fed. 644, 161 C. C. A. 554):

"The whole matter is ancillary to the bankruptcy proceedings, and the bankruptcy court has, in a broad sense, the power of a court of equity."

In the Veler Case we set aside the action of the District Court because we thought that the parties charged had not had the kind or degree of hearing to which they were entitled, from the fact that the court, which made not only the order to show cause but the final order, seemed to have regarded the conclusions upon which the order to show cause was based as "unassailable unless by new and additional evidence." The instant case is, to our minds, clearly distinguishable from the Veler Case, in that here Judge Killits, after formulating the specific charges on which the order to show cause was based himself retired from the trial of the issues, which was turned over to Judge Tuttle; and, as we have already suggested, the record contains nothing to show that the latter judge based his conclusions otherwise than upon his own independent judgment, formed after hearing the testimony of witnesses and the arguments of counsel, or that he gave undue weight to the fact that a co-ordinate judge had presented the charges and preliminarily found the facts on which the order to show cause issued. We think it proper, however, to say that

in our opinion Judge Killits would have followed a better practice if, after his disqualification was entered, he had refrained from himself further prosecuting the inquiry which resulted in the order and direction of April 1, 1918, before referred to. But that order and direction was not the final action of the court. The order and finding were "in all respects approved and confirmed" by Judge Tuttle.

[9] 4. We cannot accede to the proposition that Judge Tuttle was without jurisdiction to hear the instant proceedings from the fact that there are two District Judges for the Northern district of Ohio, and that Judge Westenhaver, the other District Judge, is not shown to have been disqualified. We set to one side, as without the record, the assertion in petitioner's brief that Judge Westenhaver was in fact not disqualified, as well as respondent's assertion that Judge Tuttle was already under general designation to sit in the Northern district of Ohio. As the record stands, we think there was no lack of jurisdiction in Judge Tuttle. The authority to designate another judge upon Judge Killits' certificate of disqualification is expressly conferred by section 21 of the Judicial Code, under the practice specified in sections 20 and 14 (sections 981, 987). Assuming that Judge Westenhaver was not disqualified, the Circuit Judge was not bound to designate him; the statute gave the Circuit Judge the choice of methods. It will be presumed that the designation was made for reasons deemed sufficient. We find nothing in the statutes which limit the power of designation to a case where all the judges of the district are disqualified; and we cannot read such limitation into the statute.

[10] 5. We see no basis for the proposition that no ground is stated in the rule to show cause empowering the court to enter the order complained of, and that the grounds stated therein are contrary to the facts and the law as shown by the record. Petitioner, as attorney for the trustee, was in effect the attorney for the bankrupt's estate and its creditors. According to the facts preliminarily found by Judge Killits, and ultimately found by Judge Tuttle, petitioner, while thus acting as attorney for the estate and its creditors in rendering the service for which the allowance in question was made, was really working against their interests, and impliedly without the knowledge of the court allowing the account. Under elementary principles (if these findings are sustained) petitioner was not entitled to receive or to retain the compensation in question. It is a mistake to treat these findings as mere assumptions; nor can we upon this record say that the facts so stated and found are contrary to the facts as presented to the trial court. As we have already said, the instant proceeding is not such as to enable us to consider the controverted questions of fact. The substantial merits of the case, except as involved in the legal propositions which have been discussed, are not before us.

It results from the views we have expressed upon these various propositions that the action of the District Court here complained of must be affirmed.