### Petition of BAXTER.

### In re ORINOCO CORPORATION.

(Circuit Court of Appeals, Sixth Circuit.  December 7, 1920.)

No. 3388.

1. **Bankruptcy ⬉⟶440—Order held reviewable by petition to revise.**

An order of a court of bankruptcy directing a trustee to carry out a settlement previously made pursuant to authority given him on his petition *held* an order made in the bankruptcy proceeding, and reviewable on a petition to revise.

2. **Bankruptcy ⬉⟶252—Administrative orders as to compromise by trustee may be made by judge in first instance.**

General Order in Bankruptcy No. 12,[1] providing that after a general reference all proceedings, except such as are required by the act or by the General Orders to be had before the judge, shall be had before the referee, does not deprive the judge of authority to hear in the first instance a petition by the trustee for authority to settle an adverse claim.

3. **Bankruptcy ⬉⟶252—Petition by trustee for authority to settle controversy sufficient.**

Petition by a trustee for authority to settle a controversy *held* not jurisdictionally defective, under General Order No. 33 (89 Fed. xiii, 32 C. C. A. xxxiii).

4. **Bankruptcy ⬉⟶252—Estoppel by laches to attack order.**

An order authorizing a trustee to compromise a controversy *held* not subject to attack by a creditor after a delay of five years, on the ground that no notice of the proposed compromise was given, as required by Bankruptcy Act, § 58a(7) being Comp. St. § 9642a(7), where it is found as a fact that the compromise agreement was fair and made in good faith, and such creditor had actual knowledge of it at the time, and permitted it to be carried out by the adverse parties, to such extent that they could not be restored to their former position.

5. **Bankruptcy ⬉⟶252—Settlement of controversy based on consideration.**

A compromise and settlement of a controversy by a trustee *held* not without consideration, where it disposed of litigation by which a large fund claimed by the estate was tied up, and its possible loss threatened, by the payment of a comparatively small sum.

Petition for Revision of Proceedings of the District Court of the United States for the Western Division of the Southern District of Ohio; Howard C. Hollister and John W. Peck, Judges.

In the matter of the Orinoco Corporation, bankrupt. Petition by George N. Baxter to revise orders of the District Court. Affirmed.

George N. Baxter, of Washington, D. C., in pro. per.

Constant Southworth, of Akron, Ohio (Maxwell & Ramsey, of Cincinnati, Ohio, H. H. Glassie, of Washington, D. C., and Charles P. Rogers, of New York City, on the brief), for respondents.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

KNAPPEN, Circuit Judge.  The situation out of which the present controversy arises is this:

In the year 1883 the government of Venezuela gave to one Fitzgerald a 99-year lease of a large tract of land for mining and other purposes. This concession was afterwards assigned by Fitzgerald to the Manoa

⬉⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

[1] 89 Fed. vii, 32 C. C. A. xvi.

Company, Limited, by the latter to the Orinoco Company, by that company to the Orinoco Company, Limited, and by the last-named company to the Orinoco Corporation. After operations had been conducted to some extent under the concession, the government of Venezuela caused it to be annulled, and the Orinoco Company, Limited, to be ousted therefrom, and caused or permitted certain property used in operations upon the concession to be confiscated. On September 9, 1909, an agreement was reached between the government of the United States and that of Venezuela, by which the latter agreed to pay to the United States $385,000 in eight equal annual installments for the benefit of the Orinoco Corporation and its three predecessors named, in satisfaction of all claims of those four corporations. This sum of $385,000 has been fully paid by the government of Venezuela.

Shortly after the payment of the second installment the Orinoco Corporation was adjudicated bankrupt by the district court below. On June 20, 1911, the Department of State of the United States ordered the payment to the trustee in bankruptcy of the Orinoco Corporation of the entire fund of $385,000, less $75,000 to go to the Orinoco Company, Limited, $8,000 to certain attorneys, and $6,000 to be deducted on account of expenses incurred by the government of the United States in the settlement of the claims; this disposition being in accordance with arrangements between the Orinoco Corporation, the Orinoco Company, Limited, and certain other interested parties, with the approval of the District Court and of the court having charge of the insolvency proceedings of the Orinoco Company, Limited. The Treasurer of the United States eventually paid the full net amount to the trustee of the Orinoco Corporation. Meanwhile, on June 30, 1911, when but two installments of the indemnity fund had been paid by Venezuela, one Safford, claiming to be a stockholder and creditor of the Manoa Company, Limited, filed his bill in the Supreme Court of the District of Columbia, claiming an equitable lien upon the indemnity fund, and asking a receivership over the installments already paid into the treasury. Fitzgerald, who was made defendant by cross-bill, also set up an equitable interest in the fund, claiming that certain of the properties had been reconveyed to him by the Manoa Company, Limited, and excepted from subsequent conveyances.

On November 6, 1914, the trustee in bankruptcy of the Orinoco Corporation applied to the District Court for authority to compromise the claims of Safford and Fitzgerald by the payment to them of $35,000. By an order bearing date November 6, 1914, the trustee was formally authorized to compromise the claims and suits referred to for the sum stated, and on such terms as he should deem for the best interests of the estate. On the same date a written agreement was made between the trustee, on the one hand, and Safford and Fitzgerald, on the other, by which the former promised the latter, in consideration of their promise to release their claims and demands against the fund, to pay them $35,000, and to release them from liability on account of the injunction undertakings in the suits in the Supreme Court of the District of Columbia, as well as from liability to the trustee on all accounts, including liability for damages occasioned by such litigation.

This promised payment not having been made, Safford, on July 5, 1919, petitioned the District Court for an order directing the trustee to pay forthwith to Safford and Fitzgerald the agreed sum of $35,000 and interest thereon. The trustee declining to oppose Safford's petition, Baxter, the petitioner herein, and one Dolge, both being creditors of the bankrupt Orinoco Corporation, filed their petition in the District Court, setting forth certain defenses thereto.

On July 28, 1919, after hearing before District Judge Hollister, who had made the original order of November 6, 1914, the Safford petition was granted, and that of Baxter and Dolge dismissed. Thereafter the trustee in bankruptcy, for reasons not here important, asked the court to vacate the order of July 28, 1919, directing him to pay the $35,000 in question, and Baxter and Dolge applied for a rehearing thereon. Both these petitions were on due hearing denied and findings of fact made by Judge Peck, who had succeeded Judge Hollister on the latter's death. The present proceedings are brought by Baxter alone, under section 24b of the Bankruptcy Act,[2] to revise the order of July 28, 1919, which directed the trustee to carry out the settlement with Safford and Fitzgerald, as well as the order of December 9, 1919, denying the petition for rehearing. Both the trustee in bankruptcy and Dolge refused to join with Baxter in this proceeding. The respondents are Safford, the representatives of Fitzgerald, and the Berkshire Investing Company, which claims by assignment a portion of the Fitzgerald interest.

[1] 1. The motion to dismiss the petition to revise is denied. We see no merit in the contention that the proceedings under review present "a controversy arising in bankruptcy proceedings," and so reviewable only by appeal. The character of the proceeding below in a reviewable sense is, in our opinion, determined by the summary nature of the order of July 28, 1919, directing the trustee in bankruptcy to pay the $35,000 to Safford and Fitzgerald, in accordance with the authority for settlement given November 6, 1914, and by the equally summary order of December 9, 1919, denying the motion to vacate the order of July 28, 1919, and refusing rehearing thereon. The orders complained of are clearly "administrative orders in the ordinary course of bankruptcy between the filing of the petition and the final settlement of the estate." In re Farrell (C. C. A. 6) 176 Fed. 505, 508, 509, 100 C. C. A. 63, 66, 67; Barnes v. Pampel (C. C. A. 6) 192 Fed. 525, 527, 528, 113 C. C. A. 81. Safford and Fitzgerald had originally no right to demand that the settlement authorized by the order of November 6, 1914, be made, and did not so demand. The original order was made only on the trustee's petition, as a purely administrative act. The circumstance that Safford and Fitzgerald later asked a carrying out of a settlement previously made by administrative order does not change the character of the proceeding in a reviewable sense.

The objection that the petition for revision was filed too late is not well taken. The amendment to our rule 34 (261 Fed. v, 171 C. C. A. v), requiring petitions to revise to be filed within 20 days from the entry of the order of which revision is sought, was not effective, ex proprio vigore, until April 11, 1920, which was more than a month

2 Comp. St. § 9608.

after the petition was filed in this court. The direction of the District Judge that proceedings for revision be taken on or before January 9, 1920, was ineffective, in the absence of showing that copy of the amendment to rule 34 had been served upon counsel for the petitioner. The amendment to the petition made April 6, 1920, was allowed by this court while it had jurisdiction of the case, and is not forbidden by rule 34. We see no jurisdictional defect in the bond given by petitioner under the order of December 9, 1919, which was duly filed in that court. The security is not governed by section 1660 of U. S. Compiled Statutes of 1916.

2. Petitioner asserts the fatal invalidity of the order of July 28, 1919 (which granted Safford's petition that the trustee pay the agreed sum of $35,000), and the order of December 9, 1919 (which affirmed the order of July 28), on the ground that the order of November 6, 1914, which authorized the trustee to make the compromise, was ineffective for several reasons.

[2] (a) General Order in Bankruptcy No. 12 provides that after a general reference "all proceedings, except such as are required by the act or by these general orders to be had before the judge, shall be had before the referee." The petition of November 6, 1914, was presented directly to the judge, who clearly had jurisdiction over it. The provision just quoted does not take from the judge authority to hear in the first instance an application of this kind. In re De Ran (C. C. A. 6) 260 Fed. 732, 739, 171 C. C. A. 470.

[3] (b) General Order in Bankruptcy No. 33 provides that the application for authority to settle a controversy by agreement with the other party shall "clearly and distinctly set forth the subject-matter of the controversy, and the reason why the trustee thinks it proper and most for the interest of the estate that the controversy should be settled by arbitration or otherwise." The petition is attacked as fatally lacking in this respect. We are not so impressed. The petition distinctly recited that in the Safford and Fitzgerald case the Supreme Court of the District of Columbia enjoined the payment to the trustee in bankruptcy of the Orinoco Corporation, out of the treasury of the United States, of the whole or any part of the Orinoco indemnity fund. It reports a proposition of compromise of the controversy therein, embracing the release to the trustee by Safford and Fitzgerald of all their claims against the trustee in bankruptcy of the Orinoco Corporation, as well as against that corporation, the dissolving of the injunctions so far as they interfere with the payment of such funds to such trustee in bankruptcy, etc.; such compromise to be a complete satisfaction and settlement between all parties concerned and to "put to end all controversy which has been pending in the District of Columbia court," whereby the installments of the indemnity fund accruing from time to time "have been prevented from coming into the hands of said petitioner as such trustee."

The trustee asked authority "to compromise and settle said controversy in a sum not to exceed $35,000 upon such terms as he may deem for the best interests of the estate." The application thus "clearly and distinctly set forth the subject-matter of the controversy." The

"reason why the trustee thinks it proper and most for the interest of the estate that the controversy be settled" is naturally and necessarily implied in the recitals that by such settlement the obstacles which up to that time had prevented the trustee in bankruptcy from getting possession of the funds so impounded by the action of the Supreme Court of the District of Columbia would be entirely removed. We think the petition for leave to compromise not jurisdictionally defective. It will be presumed in its aid that the court took into account the existence of the obstacles referred to, with which the court was entirely familiar.

[4] (c) Section 58 of the act (Comp. St. § 9642) provides for notice to creditors of the "proposed compromise of any controversy," and General Order in Bankruptcy No. 28 [3] for such notice and hearing when it is proposed to "compound and settle any debt or other claims due or belonging to the estate of the bankrupt." It is not entirely clear that either section 58 or this General Order applies to a summary proceeding of this nature. But, assuming the contrary, petitioner is in our opinion clearly estopped to complain. Judge Peck, in denying the petition for rehearing and the motion to vacate the order requiring the trustee to pay the $35,000 as agreed, said:

"It does not appear that notice was given to the creditors of this application to compromise or that the creditors assented thereto, nor does it appear to the contrary. The order was made five years ago. No steps were taken to review the order."

But this is not all. Judge Peck formally found as facts that the compromise agreement made pursuant to the authority of the District Court, and all steps taken under it, or in connection with it, by Safford and Fitzgerald, were fair and in good faith, and without any fraud on their part, and that counsel for the trustee at that time had full knowledge of the facts relating to the transaction; also that no creditor or interested party other than Baxter and Dolge complained of the compromise; further, that Baxter and Dolge, in person or by counsel, had actual knowledge of it, and that neither ever took any steps to have a final disposition of any objection thereto prior to July 15, 1919, nor was any evidence offered at the hearings in support of the allegations in the pleadings filed by them. It was also found that, while this compromise agreement was not, after its execution, reported in writing to the District Court, yet that court was very shortly thereafter advised of the fact of its execution and of the compromise. These and all the other findings of fact were made upon agreement of counsel thereto. We are bound to accept them as true, and can consider only the questions of law raised. In re Stewart (C. C. A. 6) 179 Fed. 222, 228, 102 C. C. A. 348. Moreover, upon his motion to set aside the order requiring the trustee to carry out the compromise, as well as on his petition for rehearing, petitioner had full opportunity to try out the merits of the questions which he now seeks to raise. On both principle and authority it must be held that petitioner has lost whatever right he ever had to complain of lack of notice. In re Ives (C. C. A. 6) 113 Fed. 911, 914, 51 C. C. A. 541.

[3] 89 Fed. xi, 32 C. C. A. xxviii.

(d) We see no merit in the criticisms that the order of November 6, 1914, made by the District Court below, was invalid, as assuming to authorize the trustee to compromise upon terms deemed by him for the best interests of the estate, or that the agreement actually executed thereunder exceeded even such assumed authority in that it stipulated to release Safford and Fitzgerald from all liability to the trustee. The District Court knew of the agreement made and presumably regarded it as within its order. Nor do we see anything to criticize in the fact that the Fitzgerald interests were not parties to Safford's petition to the court below to have the settlement carried out. Fitzgerald's representatives appeared on the hearing below, are made respondents to the proceedings here, and are claiming the benefit of the action there had.

[5] 3. Petitioner specially stresses the proposition that the compromise settlement authorized by the order of November 6, 1914, was without valuable consideration. The argument is that the only consideration which the trustee in bankruptcy of the Orinoco Corporation was to receive from Safford and Fitzgerald was the release of their claims and demands against the portion of the fund awarded by the Secretary of State to the trustee, while, in reality, Safford and Fitzgerald had at the time no claim or demand to give up, for the reason that the fund in controversy already belonged to the trustee in bankruptcy, free from any lien or interest on the part of Safford and Fitzgerald. This conclusion rests upon the assertion that the Secretary of State had full jurisdiction of the subject-matter and of the parties asserting claims against the fund, including Safford, Fitzgerald, and the trustee in bankruptcy, and that the order of distribution made by the Secretary had the force and effect of a judgment, thereby estopping Safford and Fitzgerald from asserting any claim or demand against it. To this defense of lack of consideration there is more than one answer. In the first place, it is by no means clear that the Secretary of State had judicial authority to determine finally the distribution of the fund, and thus foreclose inquiry by the ordinary courts. There is an intimation to the contrary in Le Crone, Receiver of the Orinoco Co., Ltd., v. McAdoo, Secretary of the Treasury (decided June 1, 1920) 253 U. S. 217, 40 Sup. Ct. 510, 64 L. Ed. 869. Again, the distribution made by the Secretary purports to be based on the consent of the four interested corporations, and the approval of the courts in charge of the bankruptcy and receivership proceedings respectively. Indeed, the communication of the Secretary to attorneys concerned in the controversy between Fitzgerald and Baxter, sent contemporaneously with the notice of the proposed distribution, clearly indicates that the Secretary had no intention to "attempt to pass upon the respective claims of the different companies."

But there are further facts to be reckoned with: Safford's bill before referred to, which was filed in the Supreme Court of the District of Columbia, following the distribution made by the Secretary of State, was directed against the Secretary of the Treasury, the Treasurer of the United States, the four corporations before named, Baxter and Fitzgerald, and others, including Dolge, who was then

the trustee in bankruptcy appointed by the District Court. It challenged the right of the Orinoco Corporation to the sum awarded it, asserted that the agreement on which the distribution was based was obtained through fraud and collusion between certain of the interested private parties and corporations, and claimed as judgment creditor of the Manoa Company, Limited, an interest on Safford's part in the fund to the extent of $56,000. Fitzgerald also asserted fraud and collusion in obtaining the distribution. This suit challenged the binding authority of the action taken by the Secretary of State. If the Secretary's action was merely ministerial, the Supreme Court of the District of Columbia had authority to determine the merits between the parties, unless the District Court in bankruptcy had prior exclusive jurisdiction. Houston v. Ormes, 252 U. S. 469, 472, 40 Sup. Ct. 369, 64 L. Ed. 667. But although the District Court was claiming exclusive jurisdiction over the entire sum awarded the Orinoco Corporation, but a small portion of it had then been paid; at the same time, the Secretary of the Treasury and the Treasurer of the United States were under injunction of the Supreme Court of the District of Columbia from delivering outside of that district any warrant on the fund; and although the trustee in bankruptcy of the Orinoco Corporation denied that he was subject to the jurisdiction of the Supreme Court of the District of Columbia, that court insisted that the trustee had submitted himself to its jurisdiction, appointed that officer receiver in the Safford case (that appointment was accepted), and enjoined him from disposing of any of the funds except by paying the same to himself as receiver of that court.

A sharp conflict, amounting to a deadlock, between the District Court and the Supreme Court of the District of Columbia as to jurisdiction over the fund was presented. To say the least, it was by no means so clear and certain that the Supreme Court of the District of Columbia was without jurisdiction as to render without consideration a compromise which would dispose of that conflict by the payment of the comparatively small sum of $35,000. That as a practical proposition the trustee in bankruptcy was, in that capacity, threatened with possible loss of control over at least the bulk of the fund sufficiently appears, notwithstanding the affirmance by this court (Orinoco Iron Co. v. Metzel, 230 Fed. 40, 144 C. C. A. 338) of an order made by the District Court after the compromise authority of November 6, 1914, was given, restraining the prosecution of suit in the Supreme Court of the District of Columbia on the part of the Orinoco Iron Company, whose claim had already been presented to the district court. Upon the facts found, the trustee in bankruptcy was justified in favoring the compromise in question, provided he acted in good faith. Union Bank v. Geary, 5 Pet. 99, 114, 8 L. Ed. 60. That he so acted is not open to question on this record. It follows that the defense of lack of consideration for the compromise must be overruled.

4. The court below found as a fact that Baxter and Dolge allowed the compromise in question to be fully performed by Safford and Fitzgerald, præcipes to be filed for the dismissal of the suit in the Supreme Court of the District of Columbia, and the injunctions there-

in vacated, as agreed by such compromise, and $226,500 to be paid into the registry of the District Court. The court further found as a fact that "there has been no excuse or explanation for the laches of the said Baxter and Dolge existing since November, 1914." If the compromise agreement is not carried out, the Safford and Fitzgerald interests cannot be restored to the position they previously occupied. We agree with the conclusions of the District Court that petitioner is now estopped from complaining of the compromise agreement.

It follows, from these views, that the orders of the District Court complained of must be affirmed.