## In re ANN ARBOR MACH. CORPORATION.

### In re BOURNE-FULLER CO.

(Circuit Court of Appeals, Sixth Circuit. July 1, 1921.)

No. 3569.

1. Bankruptcy ⬤�in╴440—Order refusing to vacate adjudication reviewable on petition to revise.

An order denying a petition to set aside an adjudication is not reviewable by appeal, but only by petition to revise, under Bankruptcy Act, § 24b (Comp. St. § 9608).

⬤⟘For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**2. Bankruptcy ⊂⇒446—On petition to revise, court cannot find facts.**

In a proceeding to revise, under Bankruptcy Act, § 24b (Comp. St. § 9608), only questions of law can be determined, and those questions must arise out of the facts found by the court below or admitted by the parties.

**3. Bankruptcy ⊂⇒43—Directors of corporation held to have power to authorize voluntary petition.**

Directors of a Delaware corporation, with by-laws conferring on the directors power to manage the business and property of the corporation, and also general power to do all lawful acts and things not directed or required to be done by the stockholders, *held* to have power to authorize the filing of a petition in voluntary bankruptcy.

**4. Bankruptcy ⊂⇒47—Creditor cannot contest voluntary proceedings.**

It is not open to a general creditor to raise the question of the regularity of the convening of the meeting of a lawfully constituted board of directors of a corporation, at which voluntary proceedings in bankruptcy were authorized.

Appeal from the District Court of the United States for the Eastern District of Michigan; Arthur J. Tuttle, Judge.

In the matter of the Ann Arbor Machine Corporation, bankrupt. The Bourne-Fuller Company, a creditor, appeals from an order denying its motion to vacate adjudication. Appeal dismissed.

A. F. Freeman, of Ann Arbor, Mich. (Millis, Streeter, Murphy & Berns and Cook, McGowan, Foote, Bushnell & Lamb, of Cleveland, Ohio, on the briefs), for appellant.

Max Finkelston, of Detroit, Mich. (Finkelston & Lovejoy, Guy A. Birge, Clark, Emmons, Bryant, Klein & Brown, and B. J. Lincoln, all of Detroit, Mich., on the briefs), for appellees.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

PER CURIAM. [1] This is an appeal from an order of the District Court denying the petition of a creditor of the bankrupt to set aside an adjudication of bankruptcy made upon voluntary petition. The order in question is not reviewable by appeal, but is subject to review only by petition to revise in matter of law, under section 24b of the act (Comp. St. § 9608). Brady v. Bernard (C. C. A. 6) 170 Fed. 576, 579, 95 C. C. A. 656; In re De Camp Glass Casket Co., decided by this court April 15, 1921, 272 Fed. 558. And see Vallely v. Insurance Co., 254 U. S. 348, 356, 41 Sup. Ct. 116, 65 L. Ed. ——. The appeal must therefore be dismissed.

The case has been fully heard on the merits, and we are naturally disposed to exercise the authority, if we have any, to treat this review as under section 24b; there being no statutory limitation of time within which the petition to revise must be presented, although our amended rule 34 (261 Fed. v, 171 C. C. A. v) contains a limitation of 20 days from the time the order sought to be reviewed was entered, and this 20-day period has long since elapsed. But, were we to assume (we do not so decide) that we have such authority, it seems clear that its exercise could not help petitioner.

The bankrupt was incorporated under the laws of Delaware. Its principal place of business was at Ann Arbor, Mich., where it had

an office. About July 1, 1920, being financially embarrassed, although claiming to be solvent, in the bankruptcy sense, it called a meeting of its creditors, which resulted in a written agreement, entered into by a considerable number of its creditors, providing for an extension of maturity of debts and their payment in installments, that no attempt be made by any of the creditors to secure preferences, and for the appointment of an executive committee composed of five of the larger creditors, to whom the conduct and control of the company's affairs should be committed. The agreement provided that it should be null and void unless executed on or before July 6, 1920, by creditors holding at least 95 per cent. of the amount of the company's liabilities. In connection with this creditors' arrangement, an agreement was prepared providing for the deposit by shareholders, pending settlement with creditors, of their stock in escrow with a named trustee, with authority in such trustee to vote the stock in the election as directors, during the pendency of the escrow agreement, of the five members of the creditors' committee, including the election of a successor director in case the office of any should become vacant.

Appellant contends that the contemplated creditors' committee was duly elected and continued to act until the petition in bankruptcy was filed, except that one of the members resigned and was replaced by another; that all of the corporate directors duly resigned, and that their offices were filled by the respective members of the creditors' committee, thereby creating the only duly elected and qualified board of directors. Appellant meanwhile obtained a judgment against the bankrupt for several thousand dollars, and on and before September 1, 1920, levied upon the property of the bankrupt and advertised the same for sale on September 18, 1920. On September 11, 1920, five members of the original board of directors assembled at Detroit, Mich., and passed a resolution authorizing the president to file on behalf of the corporation a petition in voluntary bankruptcy, whereupon the president caused such voluntary petition to be filed. Appellant's proposed execution sale was accordingly enjoined. Appellant contends that in the situation stated the directors who passed the bankruptcy resolution were not the lawful directors, and so were without authority to act; also that the board of directors, even if lawfully constituted, had no authority either by charter or by-law to authorize the filing of petition for adjudication of bankruptcy, without affirmative vote of the holders of a majority of the stock, which vote was not had; that such directors had no authority to take the action in question at Detroit, but, if at all, only at the bankrupt's office at Ann Arbor; and that the resolution authorizing the bankruptcy proceedings was thus without authority, and the District Court without jurisdiction to adjudicate.

The issues presented by the motion to set aside the adjudication of bankruptcy were referred to the referee in bankruptcy as special master, who, on testimony taken, found specifically that the original board of directors, as constituted previous to the formation of the creditors' committee, continued to hold meetings after such appoint-

ment, although without written records thereof (except on one occasion), until the meeting at which the filing of bankruptcy petition was authorized; that in the letter accompanying the proposed agreement sent to creditors by the committee the proposed resignation of the then directors was expressly stated to be "contingent upon all the creditors accepting this propostion on or before July 6, 1920"; that the creditors' agreement was never accepted by 95 per cent. of the creditors; that all of the stockholders did not execute the escrow agreement referred to; that, while there was submitted at a meeting of the creditors' committee the tender by six of the directors of their resignation as such, such written resignation expressly stated that it was made "with the understanding that we stand resigned only during such time as the creditors' committee, elected under date of June 15th, does properly function in accordance with the agreement sent to creditors under date of July 1st, and as further set forth under the terms of the agreement in escrow by the stockholders of the corporation now on deposit," etc.; that the resignations of these six directors were never acted upon by any one, although later the resignation of the seventh director (who did not take part in the Detroit directors' meeting referred to) was accepted by the creditors' committee; that the corporate by-laws provided that directors should act until their successors are elected and have qualified; that during the time the creditors' committee conducted the business of the bankrupt it recognized the board of directors as a legal board. The referee further reported that he did not find that the trustee under the stockholders' escrow agreement ever held a stockholders' meeting, or accepted the resignation of the board of directors, or attempted to elect another board, although as a member of the creditors' committee he took part in accepting and acting upon the resignation of the seventh director already referred to.

The referee concluded as ultimate facts that the original board of directors continued as the only board of directors of the bankrupt up to the time the petition in bankruptcy was filed; that the conditions under which the directors' resignations were made were not met; that the resignations were never accepted; that there was no attempt to elect a new board of directors; that the creditors' committee did not consider themselves, and the referee did not find as a fact that they constituted, the board of directors of the corporation; that the creditors' committee in permitting appellant to obtain a preference under its execution was not properly functioning; and that the original board of directors, as the only de facto and de jure board, was in the exercise of its legal authority in calling the Detroit meeting, at which the resolution was passed. The referee therefore concluded, as matter of law, that the motion to set aside the adjudication was not sustainable. The District Judge overruled the exceptions to the referee's findings of fact and conclusions of law, and formally affirmed the same.

[2] In a proceeding to revise under section 24b of the act only questions of law can be determined, and those questions must arise out of the facts found by the court below or admitted by the parties.

In re Holden (C. C. A. 6) 203 Fed. 229, 233, 121 C. C. A. 435, and cases there cited; Matter of Loving, 224 U. S. 183, 188, 32 Sup. Ct. 446, 56 L. Ed. 725; In re De Ran (C. C. A. 6) 260 Fed. 732, 737, 171 C. C. A. 470. We cannot determine questions of fact involved in the order sought to be reviewed when there is any substantial evidence to support the findings. In re Stitt (C. C. A. 6) 252 Fed. 1, 6, 164 C. C. A. 113. If, therefore, we were to treat this review as under section 24b, we should be bound to accept the conclusion of fact adopted by the court below, that the directors who authorized bankruptcy proceedings were the lawfully constituted and acting directors of the bankrupt; for there was substantial evidence tending to sustain such findings, which are expressly provided for by subdivision 2 of rule 34 (202 Fed. v, 118 C. C. A. v) of this court. This being so, there would remain for determination two questions of law: First, whether under the laws of Delaware and the charter of the bankrupt its board of directors had power, without the stockholders' authorization, to institute proceedings for adjudication of bankruptcy; and, second, whether the adjudication of bankruptcy is reversible because the directors' meeting which authorized the petition was not lawfully convened.[1]

[3] The first question is foreclosed by In re De Camp Glass Casket Co., supra (certiorari denied by the Supreme Court June 6, 1921[1]), which case involved the authority of a board of directors, under the incorporation statute of Delaware and the charter of that corporation. The certificate of incorporation of the present bankrupt provides that the by-laws may "confer powers upon its directors in addition to the foregoing, and in addition to the powers and authorities expressly conferred upon them by the statute." The by-laws provide that—

"The property and business of this corporation shall be managed by its board of directors, seven in number, * * *" and (14) "in addition to the powers and authorities of these by-laws expressly conferred upon them, the board may exercise all such powers of the corporation and do all such lawful acts and things as are not by statute or by the certificate of incorporation or by these by-laws directed or required to be exercised or done by the stockholders."

The articles of incorporation expressly empower the board of directors to "authorize and cause to be executed mortgages and liens upon the real and personal property" of the corporation. The requirement of stockholders' authorization, contained in both the statute and the articles of incorporation, is confined to the selling, leasing or exchanging of "all its property and assets, including its good will and corporate franchises." Under the authority of the De Camp Case, there clearly is no limitation upon the power of the directors to authorize bankruptcy proceedings.

[4] As to authority to convene at Detroit: The by-laws authorized the directors to hold their meetings at the office of the corporation at Ann Arbor "or at such other place as they may from time to time

---

[1] Solvency of an alleged bankrupt is not open as a defense to a voluntary adjudication. Hanover Nat. Bank v. Moyses, 186 U. S. 181, 191, 22 Sup. Ct. 857, 46 L. Ed. 1113.

[1] 255 U. S. ——, 41 Sup. Ct. 624, 65 L. Ed. ——.

determine." Passing the question whether this provision would authorize a majority of the board of directors to hold a meeting elsewhere than at Ann Arbor unless pursuant to previous determination by the board [2] (which is not shown), we think appellant precluded from raising this question; for the reason that a creditor has no right to oppose an adjudication in bankruptcy except as expressly given by statute (which gives him no right to contest an adjudication upon a voluntary petition), and so cannot maintain a petition to vacate an adjudication in such case after it is made. In re Ives (C. C. A. 6) 113 Fed. 911, 913, 51 C. C. A. 541; In re Guanacevi Tunnell Co. (C. C. A. 2) 201 Fed. 316, 318, 119 C. C. A. 554. In the Ives Case the ground of the motion to vacate was that when the petition was filed and the adjudication had one member of the bankrupt firm (who joined in the petition through an attorney in fact) was mentally incompetent. The decision was, however, put upon the ground, not that the sane partner had the authority, when acting alone, to file the petition, but that the bankruptcy court acquired jurisdiction of the proceeding on the filing of the petition, and that although (inferentially) the adjudication might be set aside on behalf of the partner who was mentally incompetent, the creditor, having no right to contest the adjudication, "had no right to petition for its vacation after it was made." [3] In the Guanacevi Case the grounds of attack included the proposition that only a majority of the shareholders could under the laws of the state of incorporation dissolve a corporation prior to the time fixed in the articles of incorporation. The court there said:

"We will examine his contention, although we think it is one which the creditor has no standing to make in the case of a voluntary petition."

Upon the authority of these cases, we think it not open to appellant to raise the question of the regularity of the convening of the meeting of a lawfully constituted board of directors at which the bankruptcy proceedings were authorized. It thus seems plain that appellant can gain nothing by a hearing upon this record as if under section 24b.

We content ourselves with dismissing the appeal from the order denying the motion to vacate.

[2] The record here does not affirmatively show a notice or call for the meeting, except that the resolution recites that a special meeting was had "pursuant to waiver of notice attached"—the waiver, however, not appearing in the record.

[3] The petition for adjudication in the instant case is not in the record, but appellant presents no contention that it failed to state the jurisdictional facts required by the statute.