WILLIAM E. HAYWARD

*v.*

DON A. BURKE *et al.*

*Filed at Springfield, June 12, 1894.*

1. PARTNERSHIP—*liability of surviving partner for a firm debt.* A partnership creditor has a remedy in equity against the estate of the deceased partner, when he shows the insolvency of the survivors, or his inability to collect his debt from the survivors; such creditor may resort in the first instance, for his debt, to the surviving partner, or to the assets of the deceased partner.

2. SAME—*rights of surviving partners.* On the death of one of three partners, the survivors will have the right to continue in possession of the partnership assets, pay the debts, and settle the firm business, and account with the representatives of the deceased member. In paying partnership debts, the survivors are paying their own obligations as well as those of the deceased partner.

3. SAME—*deceased partner—interest of his estate, as against firm creditors.* The interest of a deceased member of a partnership in the firm assets, is only his proportional part of what remains after all the partnership debts are paid; and the surviving partners are regarded as trustees of the firm assets for the benefit of the firm creditors, and such trust still attaches to such portions of the assets as are paid over to the representatives of the deceased partner, before the firm creditors are fully paid.

4. SAME—*release of estate of deceased partner by accepting interest on firm debt.* After the death of a partner, the payment of interest by the survivors on a firm debt for an extension of the time of payment, will not release the estate of the deceased partner, in the absence of any new agreement that it shall have that effect.

5. Surviving partners, being charged with the duty of settling the partnership business and paying the debts of the firm, may rightfully pay interest on a debt they fail to pay when due, at the legal rate, provided there is no unnecessary delay in settling up the estate, and when the surviving partners agree to pay interest on a debt after its maturity, and thereby obtain an extension of the time of payment, this will not amount to a new contract with the creditor, or give rise to the presumption that there has been a release of the estate of the deceased partner.

6. SAME—*liability of retiring partner for debt assumed by successors.* Where a firm is dissolved by the retirement of one of the partners, and the remaining partners assume and agree to pay the firm debts, the retiring partner is not thereby relieved of his liability to pay the firm debts. In order to release the old liability and create a new one, there must be assent on the part of the creditor, and of the original debtors, and of the persons who assume the debts.

7. The agreement between the retiring and the remaining partners, that the latter shall assume the debts, can not bind the creditors who do not assent to the arrangement. If the creditor assents to such arrangement, or agrees to accept the continuing or surviving partners as his exclusive debtors, and releases the retiring partner, or the estate of a deceased partner, he may lose all claim against the latter, and there will be a novation of the debt; such assent or agreement on the part of the creditor may be either express, or implied from his subsequent acts or conduct.

8. SAME—*release of old firm by taking security or new promise from new firm.* The mere fact that a creditor takes additional security from a new firm without releasing the old debt, will not absolve a retiring partner from his original responsibility. The latter is not discharged when the new firm pays interest on the debt to the creditor, either at the new or the old rate, and the position of the estate of a deceased partner, with reference to the question of discharge by reason of a creditor's dealings with the surviving partners, is very similar to the position of a retired partner, except in the matter of suretyship.

9. If a creditor of a firm knows of the death of one of the firm, and continues to deal as before with the survivors, he does not lose the remedy which he had against the estate of the deceased partner, unless there is evidence showing an intention to abandon the right of having recourse thereto for payment.

10. Even when a new partner has been introduced, a creditor of the old firm, who continues to deal with the new firm as he dealt with the old, and is paid interest by the new firm, as if the debt were its own, does not thereby deprive himself of his right to be paid out of the estate of a deceased member of the old firm. But in such case, the burden of proof is upon the retiring partner, or the representatives of the deceased partner to prove the contract of release.

11. The giving of a note by surviving partners to the holder of a certificate of deposit given by the firm for its amount, will not release the estate of the deceased member, so long as such holder retains the certificate on which all of the partners were jointly liable, unless the note has been intended to have the effect of a release, and has been accepted in satisfaction of the certificate. In the absence of such intention and acceptance, the note will be merely regarded as additional security.

12. SAME—*promissory note—when a payment of a prior debt.* Where the creditor of a firm takes the notes of the surviving partners for the amount of his claim, he does not release the estate of the deceased partner, unless it is so agreed at the time; and the *onus* of showing that it is an extinguishment lies upon those who allege it. To convert a partnership into a partner's separate debt, the intention to do so must clearly appear. There must be a deliberate and mutual assent of creditor and debtor.

13. SAME—*accepting interest—extension of time of payment to surviving partners.* It has been held that, where a creditor of a partnership, after the dissolution thereof, knowing that one or several of the partners have agreed with the others to assume and pay the debts of the firm, takes the obligation of those who should pay, in payment of his debt, and thus extends the time of payment, he thereby discharges the other partners. This is upon the theory, that the retiring partner is merely a surety for the payment of the debts.

14. If, after the retirement or death of one of these partners, their joint creditor leave his money in the hands of the surviving or remaining partners, and receives from them an increased rate of interest, in consideration of not calling in the principal, this is not such an assent to the sole credit of the remaining partners as will exempt the retiring or surviving partners from liability for the debt.

15. If the payment of an increased rate of interest by the surviving partner to the creditor of the firm does not release the estate of the deceased partner, except as to the amount of such increase, then the payment of interest by the surviving partner, where interest is excluded from the contract, will not release the estate of the deceased partner as to the principal, but only as to the interest.

16. NOVATION—*requisites.* It has been said, that in every novation there are four essential requisites: *first,* a previous valid obligation; *second,* the agreement of all the parties to the new contract; *third,* the extinguishment of the old contract; and *fourth,* the validity of the new one.

17. SAME—*presumption of novation of a debt—by accepting interest from a new firm.* A banking firm, composed of A., B. and C., gave to D. a certificate of deposit for $2,400, bearing six per cent interest, if left on deposit four months, the interest to cease at maturity, which was dated May 11, 1876. A. died July 30, 1876, and D. heard of the death soon after. The following endorsements were made on the certificate: "Interest paid to September 11, 1876, and extended four months from date;" "Interest paid to March 11, 1877, and extended to September 11, 1877;" and "Interest paid September 11, 1877, and extended to March 11, 1878." *Held,* that no presumption that D. intended to release A.'s estate and accept B. and C. as his debtor, could be inferred from the fact that he applied to the latter for his money, or accepted interest from them, and that the endorsement, made after they settled with A.'s estate, and began to do business under the name of B. and C., did not furnish any ground for the presumption of a novation.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Macoupin County; the Hon. JACOB FOUKE, Judge, presiding.

Messrs. RINAKER & RINAKER, for the appellant:

There was no release of the estate of Burke on account of the alleged contract of Grimes to extend the time of payment, because Grimes never put it out of his power to sue on the certificate. He did not receive any interest *in advance* from the surviving partners or any other person thereon. He could have sued at any time. No person or firm *ever promised to pay* him any interest on the money mentioned in the certificate for any length of time, nor did he ever agree to wait any length of time, certain or indefinite, for the money. Nothing that he did or said prevented or hindered him from suing on the certificate at any time. See: *Guard* v. *Whiteside*, 13 Ill. 7, and cases there cited; *Galbraith* v. *Fullerton*, 53 id. 126; *Woodford* v. *Dow*, 34 id. 428; *Crossman* v. *Wohlleben*, 90 id. 537;

*Rayburn et al.* v. *Day et al.*, 27 id. 46, and authority there cited; *Drake* v. *Mitchell*, 3d East, 251.

Appellant insists, that there was not any novation of the contract which existed by virtue of the certificate of deposit. No other person or firm was substituted for the firm of Burke, DuBois & Chesnut, as payers of the debt created by that certificate. No other persons became liable to pay that debt who *were not already liable to pay it*, nor in any different capacity. No agreement was made to release Burke or his estate from the payment thereof. See: Lindley on Partnership, book 11, section 11, pages 241 and 242, and cases there cited. See also the cases cited and discussed in same work, on pages 246 and 247.

In order to constitute a novation of a given contract, there must be a complete discharge of the obligors and the acceptance of another debtor, and a valid agreement on the part of the new debtor to pay the debt in consideration of the discharge of the obligor or debtor in the original contract. The old debt must be extinguished and a new debt created by mutual agreement of all parties. Parsons on Contracts, vol. 1, chapter 13, and notes; *Struble* v. *Hake*, 14 Bradwell, 546; *Deever* v. *Aiken*, 40 Ga. 423; *Gresham* v. *Marrow*, 40 id. 487; Addison on Contracts, secs. 372 and 373.

There was no release of the estate of the deceased partner of the firm that issued the certificate of deposit, in consequence of the payments by the surviving partners of that firm of interest on said certificate. Lindley on Partnership, vol. 1, book 11, section 3, page 239, and note 1, and pages 246 and 247; *Hall* v. *Jones*, 56 Ala. 493; *Knox* v. *Hayes*, 41 Mich. 329; *Brown* v. *Hazen*, 11 id. 219; *Crossman* v. *Wohlleben*, 90 Ill. 537; *Woodford* v. *Dow*, 34 id. 428.

Nor would a release result to the estate of the deceased partner Burke, had A. McKim DuBois and John A. Chesnut given the holder of the certificate of deposit their individual note, or had the new firm of DuBois & Chesnut given its

note to him while he retained the certificate on which all of the parties were jointly liable, unless such note *had been intended* to have such effect, and unless such note had been received in *lieu of* or in *satisfaction* of said certificate. See: *Loneridge* v. *Larned*, 7 Federal Reporter, 294; *Rayburn et al.* v. *Day et al.*, 27 Ill. 46, cited with approval in *Archibald* v. *Argall*, 53 id. 307; *Drake* v. *Mitchell*, 3 East, 251.

The partnership assets is a trust fund for the creditors of the firm, which a court will enforce. 2 Lindley on Partnership, 587; Story on Partnership, paragraphs 346, 347, and notes 360 and 362; *Mason* v. *Tiffany*, 45 Ill. 392.

As between appellant and appellee, the former is entitled to the payment of his certificate of deposit from the sum of money received by Burke's estate. See: Parsons on Partnership, ch. 13, sec. 4, pp. 347, 441, 442; *Stratton* v. *Tabb*, 8 Bradwell, 225, and authorities there cited; *Ransom* v. *Vandeventer*, 41 Barb., 307; Lindley on Partnership, ch. 5, sec. 1, p. 340; *Simpson* v. *Leech*, 86 Ill. 286, and cases there cited; Story on Partnership, paragraphs 97–326, and note, 346 and 347, and note to 347, 360, 361 and 362; *Rainey et al.* v. *Nance et al.*, 54 Ill. 29.

Messrs. PALMER & CHAPMAN, for the appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

This is an appeal from the judgment of the Appellate Court, affirming the decree of the Circuit Court; and the following is a statement of the facts by the Appellate Court, in its opinion:

"Beatty T. Burke, during his life, and at the time of his death, was a member of the firm of Burke, DuBois & Chesnut, bankers at Carlinville. He died July 30, 1876, leaving a will, and in October following, letters testamentary were issued to appellee and others. His surviving partners continued the business in the same name until May 19, 1877,

when they changed it, by a new agreement, to that of DuBois & Chesnut. On the 28th of April preceding, however, they had settled with the executors of their deceased partner, and paid over to them, as his portion of the firm assets, the sum of $26,760.49. They carried on the business until January 14, 1878, when they made an assignment for the benefit of their creditors to John T. Rogers.

The bill herein was filed to the August term, 1878, of the Circuit Court for Macoupin county, by John M. and John Mayo Palmer as creditors of the original firm, on behalf of themselves and such others as should see fit to become parties complainant, to charge appellee, as trustee of the assets of that firm received by him as executor of the deceased partner, for the benefit of its creditors. On the 14th of September, 1878, appellant filed his petition to become a party complainant, and was so made. The claims of the other complainants having been arranged by the parties, the bill was dismissed as to them, and the decree, on final hearing upon the pleadings and proofs, was against the appellant here.

In this case the question is one of pure law, whether upon the facts, which are all undisputed, his claim is valid as against the estate of Beatty T. Burke. Besides those already stated, they are as follows:

On the 11th of May, 1876, William Grimes deposited in the bank referred to the sum of $2,400, and received therefor a certificate, of which the following is a copy:

$2,400.00.

BANKING HOUSE OF BURKE, DUBOIS & CHESNUT,

Carlinville, Ill., May 11, 1876.

'William Grimes has deposited in this bank twenty-four hundred dollars, payable to self or order, with interest at the rate of six *per cent per annum* if left on deposit four months; interest to cease at maturity.

A. McKIM DUBOIS, Cashier,

By J. T. ROGERS.'

Grimes heard of the death of Burke soon after it occurred. Notice of the dissolution of the firm by his death was given by publication in the newspapers of the city of Carlinville, in April, 1877. On the certificate of deposit were these endorsements:

'Interest paid to September 11, '76, and extended four months from date.'

'Interest paid to March 11, 1877, and extended to September 11, '77.'

'Interest paid to September 11, '77, and extended to March 11, 1878.'

Shortly before the last extension expired, Grimes assigned the certificate to appellant 'without recourse.'

The first payment * * * was made after the death of Burke, and the last after the new firm was formed and doing business under the new name. * * Mr. Grimes testified that he made no agreement with DuBois & Chesnut to extend the time of payment; that he never consented or intended to release the estate of Burke, nor understood that he made a new loan. Nothing was said at the time."

The question is, whether the appellant, as the assignee and owner of the certificate of deposit, can enforce the payment thereof against the estate of Burke, the deceased partner of Burke, DuBois & Chesnut, the banking firm which issued the certificate of deposit. Has the estate of the deceased partner been discharged from the liability to which he was subject as a partner at the time of his death?

It is admitted, that the surviving partners, DuBois and Chesnut, are insolvent. A partnership creditor has a remedy in equity against the estate of the deceased partner, when he shows the insolvency of the survivor, or his inability to collect his debt from the survivor. (*Pope* v. *Cole*, 55 N. Y. 124; *Mason* v. *Tiffany*, 45 Ill. 392.) Such creditor may resort in the first instance, for his debt, to the surviving partner, or to the assets of the deceased part-

ner. (*Mason* v. *Tiffany, supra; Ladd* v. *Griswold,* 4 Gilm. 25.)

It is claimed, however, on behalf of appellee, that Grimes, the original holder of the certificate, released the estate of Burke, the deceased partner, from its liability upon the certificate, and accepted the survivors, DuBois and Chesnut, as his debtors in the place and stead of the original firm; or, in other words, that a novation of the debt was effected by the substitution of a new obligation, assumed by the surviving partners, in the place of the obligation of the old firm. Where a firm is dissolved by the retirement of one of the partners, and the remaining partners assume and agree to pay the firm debts, the retiring partner is not thereby relieved of his liability to pay the firm debts. In order to release the old liability and create a new one, there must be assent on the part of the creditor, and of the original debtors, and of the persons who assume the debts. (1 Bates' Law of Partnership, sec. 502; Parsons on Partnership—4 ed.—sec. 240.) It has been said, that, in every novation there are four essential requisites: First, a previous valid obligation; second, the agreement of all the parties to the new contract; third, the extinguishment of the old contract; and, fourth, the validity of the new one. (*Clark* v. *Billings,* 59 Ind. 508.) The agreement between the retiring and the remaining partners, that the latter shall assume the debts, can not bind the creditors who do not assent to the arrangement. (1 Bates' Law of Partnership, sec. 503.) If the creditor assents to such an arrangement, or agrees to accept the continuing or surviving partners as his exclusive debtors, and releases the retiring partner, or the estate of the deceased partner, he may lose all claim against the latter, and there will be a novation of the debt. (Story on Partnership, sec. 158; 16 Am. and Eng. Enc. of Law, pages 900–902.) Such assent or agreement on the part of

the creditor may be either express, or implied from his subsequent acts or conduct. (Parsons on Part.—4 ed.— sec. 326; Story on Part., sec. 158.)

In the case at bar, there was no express agreement by the creditor to release the estate of the deceased partner, and look exclusively to the surviving partners for the payment of the debt. Grimes so testifies, as is above stated. It is claimed, however, that an agreement to that effect must be implied from his conduct after the death of Burke. The circumstance relied upon, as implying such agreement, is the endorsement upon the back of the certificate of the payments of interest and extensions, as the same are above set forth. These endorsements were made, not by Grimes, but by a clerk or employé of the old firm and of the surviving partners. One of these clerks was Rogers, who signed the cashier's name to the certificate. No new partner was taken into the firm after the death of Burke. The first two payments of interest were made by DuBois and Chesnut, as surviving partners. The debt, upon which they paid interest, was their own debt as well as the debt of the deceased partner. (*Mason* v. *Tiffany, supra.*) They had the right, as surviving partners, to continue in possession of the partnership effects, pay its debts, settle its business, and account with the representatives of Burke. As matter of fact, they did pay over to Burke's executor $26,760.49, as his share of the firm assets. But the interest of a member of a partnership firm in the firm assets is only his proportionate part of what remains after all the partnership debts are paid. The surviving partners are regarded as trustees of the firm assets for the benefit of the firm creditors, and such trust still attaches to such portion of the assets, as are paid over to the representatives of the deceased partner before the firm creditors are fully paid. (Story on Part., secs. 346, 347; Parsons on Part., secs. 344, 345—4 ed.) The object of this proceeding is to secure the payment of the certificate out of the portion of the firm

assets, so paid over to Burke's executor, and held by him in trust, as aforesaid. No presumption that Grimes intended to release Burke's estate, and accept DuBois & Chesnut as his debtors, can be inferred from the fact that he applied to the latter for his money, or accepted interest from them. They did business under the firm name of Burke, DuBois & Chesnut until May 19, 1877, and we do not think, that the endorsement, made after they settled with Burke's estate and began to do business under the name of DuBois & Chesnut, furnishes any ground for the presumption of a novation.

The mere fact, that a creditor takes additional security from a new firm, without releasing the old debt, or receives interest from the new firm, will not absolve a retiring partner from his original responsibility. (*Rayburn* v. *Day*, 27 Ill. 46.) The retiring partner is not discharged where the new firm pays interest on the debt to the creditor, either at the new or the old rate. (16 Am. and Eng. Enc. of Law, page 905, and cases cited.) The position of the estate of a deceased partner, with reference to the question of discharge, by reason of a creditor's dealings with the surviving partners, is very similar to the position of a retired partner, except in the matter of suretyship hereafter mentioned. "If a creditor of a firm knows of the death of one of the firm, and continues to deal as before with the survivors, he does not lose the remedy which he had against the estate of the deceased partner, unless there is evidence showing an intention to abandon the right of having recourse thereto for payment. * * * Even where a new partner has been introduced, a creditor of the old firm, who continues to deal with the new firm as he dealt with the old, and is paid interest by the new firm as if the debt was its own, does not thereby deprive himself of his right to be paid out of the estate of a deceased member of the old firm." (Ewell's Lindley on Part., vol. 1, marg. pp. 445, 446, 447, and cases referred to.)

The burden of proof, in such cases, is upon the retiring partner, or the representatives of the deceased partner, to prove the contract of release. (16 Am. and Eng. Enc. of Law, p. 907, and cases cited.) We fail to see conclusive evidence of an intention to release Burke's estate in the endorsements upon the back of the certificate; and there is no other evidence of such intention, except these endorsements. The fact, that the original certificate of deposit, issued by Burke, DuBois & Chesnut, has never been surrendered or altered, but was retained by Grimes, and assigned by him, and presented as a claim against Burke's estate, tends to show, that there was no intention on the part of the holder of the certificate to extinguish the old contract. Even if DuBois & Chestnut had given the holder of the certificate their note, the estate of Burke would not have been released thereby, so long as such holder retained the certificate on which all of the parties were jointly liable, unless the note had been intended to have the effect of a release, and had been accepted in satisfaction of the certificate. In the absence of such intention and acceptance, the note would be merely regarded as additional security. (*Rayburn* v. *Day*, *supra; Archibald* v. *Argall*, 53 Ill. 307; *Drake* v. *Mitchell*, 3 East, 251.) "Where the creditor of a firm takes the notes of the surviving partners for the amount of his claim, * * * he does not release the estate of the deceased partner, unless it is so agreed at the time. (*Collier* v. *Leach*, 29 Pa. St. 404; *Titus* v. *Todd*, 25 N. J. Eq. 458.) The *onus* of showing, that it is an extinguishment, lies upon those who allege it. * * * (*Davis' Estate* v. *Desauque*, 5 Whart. 530.) To convert a partnership into a partner's separate debt, the intention so to do must clearly appear. There must be a deliberate and mutual assent of creditor and debtor. The creditor may take the partner's separate liability, without necessarily extinguishing that of the firm.

(*Montross* v. *Byrd*, 6 La. Ann. 519.)'' (Ewell's Lindley on Part., vol. 1, marg. p. 440, and notes.)

It has been held that, where a creditor of a partnership, after dissolution thereof, knowing that one or several of the co-partners have agreed with the others to assume and pay the debts of the firm, takes the obligation of those who should pay, in payment of his debt, and thus extends the time of payment, he thereby discharges the other partners. (*Millerd* v. *Thoen*, 56 N. Y. 402; Ewell's Lindley on Part, vol. 1, marg. page 448, note 1.) This is upon the theory that, in such case, the retiring partner is merely a surety for the payment of the debts. But it can not be said, that the executor of the deceased partner in this case occupies the position of surety, so that the extension endorsed on the certificate can have the effect of releasing the estate. There is no evidence of any agreement between the representatives of Burke on the one hand, and DuBois & Chesnut on the other, that the latter would assume the debts of the firm, and hold Burke's estate harmless. Nor, if there was such an agreement, is there any proof that the holder of the certificate had any knowledge of it, or in any way gave his assent to the arrangement.

Stress, however, is laid upon the provision in the certificate that interest was to cease at maturity; and it is claimed that this provision distinguishes the present case from any of the other cases cited. The position of appellee's counsel is that, inasmuch as the firm of Burke, DuBois & Chesnut was dissolved by the death of Burke, the surviving partners had no power to make a new contract which would bind his estate, and that the endorsements involve and imply a new contract to pay interest after maturity. If there was such a new contract, it would not necessarily relieve Burke's estate from the obligation to pay the principal sum, deposited with his bank and named in the certificate. Such a result would not necessarily follow, even if the contract

to pay interest after maturity could not be held to be binding upon Burke's estate.

Where two partners, indebted to the plaintiff on a bond, dissolved partnership, and one of them continued to carry on business, and took upon himself the partnership debts, and public notice was given that the creditors of the firm were either to come in and be paid their debts, or to look for payment to the continuing partner only; the plaintiff came in, but instead of being paid off, kept the bond, receiving interest at six per cent instead of five per cent; and it was held, that he did not thereby discharge the retiring partner from his liability to pay the bond with interest at five per cent. (*Heath* v. *Percival*, 1 P. Wms. 682; *Smith* v. *Rogers*, 17 Johns. Rep. 340; *Daniel* v. *Cross*, 3 Vesey, Jr., 277; *Bedford* v. *Deakin*, 2 B. & Ald. 210; 1 Ewell's Lindley on Part., marg. page 440.) Merely accepting payments from the continuing partners, though at an increased rate of interest, does not show an agreement to release the retired partner. (1 Bates' Law of Part., section 519.) Collyer, in his work on the Law of Partnership (Wood's 6th ed., vol. 2, p. 865) says: ''It was held in an early case in equity that, if, after the retirement of one of two partners, their joint bond creditor leave his money in the hands of the remaining partner, and receive from him an increased rate of interest, in consideration of not calling in the principal, this is not such an assent to the sole credit of the remaining partner, as will exempt the retiring partner's residuary legatee from liability in respect of the bond.''

If the payment of an increased rate of interest by the creditor to the surviving partner does not release the estate of the deceased partner, except as to the amount of such increase, then the payment of interest by the creditor to the surviving partner, where interest is excluded from the contract, will not release the estate of the deceased partner as to the principal, but only as to the interest.

We are not disposed, however, to regard these endorsements as amounting to a new contract of deposit between Grimes and DuBois & Chesnut. The endorsements do not say, that the extensions are granted upon the payment of any particular rate of interest, or of any interest. The proof shows that no interest was paid in advance. ( *Crossman* v. *Wohlleben*, 90 Ill. 537.) But if the extensions were made upon condition that interest should be paid, there is nothing to show that such interest was not charged merely for forbearance in the collection of an over-due debt. The surviving partners were charged with the duty of settling the business and paying the debts of the firm of Burke, DuBois & Chesnut. If they failed to pay a debt already due, and desired time in order to pay it, we see no reason why they had not the right to ˉpay interest thereon at the legal rate until the debt itself should be paid, provided there was no unnecessary delay in settling up the business. It may be necessary for a surviving partner to sell, or collect, or otherwise realize upon, the firm's assets, before he can discharge a firm debt. The creditor is surely entitled to interest upon his claim during the delay necessary to accomplish such conversion of the assets, and the payment of such interest to him ought not to give rise to the presumption that there has been a release of the estate of the deceased partner. (Parsons on Part.—4th ed.—sec. 328.

Although Grimes knew of the death of Burke within a few months after it occurred, yet there is no proof in the record, that, when he received the last payment of interest, he knew that DuBois & Chesnut had formed a new firm, and had ceased to act as the surviving partners of the old firm.

For the reasons herein stated, we are unable to agree with the conclusions reached by the Circuit and Appellate Courts. Accordingly, the judgment of the latter and the decree of the former are reversed, and the cause is remanded to the Circuit Court for further proceedings in accordance with the views herein expressed.      *Judgment reversed.*