**CITY NAT. BANK OF HURON, S. D., et al.**
**v. FULLER.**

No. 9032.

Circuit Court of Appeals, Eighth Circuit.

Sept. 8, 1931.

Irwin A. Churchill, of Huron, S. D. (Lewis Benson, of Huron, S. D., on the brief), for appellants.

Before KENYON and BOOTH, Circuit Judges, and DEWEY, District Judge.

KENYON, Circuit Judge.

Parties will be designated as in the trial court.

Appellee, B. R. Fuller, as plaintiff, brought suit in equity against the City National Bank of Huron, S. D., and G. O. Martin as receiver, to have adjudged and determined that said bank was indebted to him in a certain sum, and asking that defendant Martin as receiver be ordered and directed to certify the claim of plaintiff for any sum so determined to the Comptroller of the Currency as a liability due and owing by said receiver, and to issue to plaintiff a receiver's certificate of the proof of claim.

October 2, 1923, plaintiff deposited with defendant bank $4,000, and received a certificate of deposit as follows:

"City National Bank 78-41 No. T 10313
"Huron, So. Dak. October 2, 1923 51.11
 $4,000.00
 ─────────
 4,051.11

"B. R. Fuller has deposited in this Bank Four Thousand Dollars in currency funds payable to the order of himself or wife, Add $13.33 on the return of this certificate properly endorsed with five per cent per annum if left six months five per cent per annum if left twelve months. No interest after one year.

"To comply with the Federal
 Reserve Act this Bank Reserves
 the Right to Require Thirty days
 Notice of Withdrawal.
 "M. F. Walt,
 ~~President~~
 Cashier
 "(Certificate of Deposit. Not subject to check)"

The First National Bank of Huron was engaged in the general banking business at Huron, S. D. In January, 1924, its directors and those of the City National Bank entered into arrangements through their respective boards of directors by which the assets of the City National were sold to the First National in consideration of the latter to assume all liabilities. The resolution adopted by the directors of the City National stated it to be the intention of that bank to go into voluntary liquidation. The physical assets of the City National were moved to the banking house of the First National, and its assets and liabilities entered upon the books of said First National. The banking house of the City National was closed, and no further business was there transacted. Persons with checking accounts in the City National checked on the First National. Certificates of deposit on the City National were paid as presented out of the mingled assets. There was no segregation thereof. January 26, 1924, twenty-four days after the assets had been taken over by the First National, it was closed by the Comptroller of the Currency, and has since been in process of liquidation. Plaintiff knew that the City National Bank had been closed and that in some manner its business was being carried on by the First National. G. O. Martin was appointed Receiver of the City National by the Comptrol-

ler of the Currency June 10, 1924, at which time there was a finding by the Comptroller of the Currency that said bank was insolvent. Notice was given to all having claims against it to present the same to G. O. Martin, receiver, within three months from July 14, 1924. A notice to file claims was duly published by the receiver of the First National Bank, C. W. Hookway, and in pursuance thereof on October 8, 1924, plaintiff filed proof of claim in the sum of $4,064.44, with said receiver upon the certificate of deposit, hereinbefore set forth. The certificate was attached to the proof. The claim was allowed and a receiver's certificate issued to plaintiff. June 12, 1926, the receiver of the First National paid to plaintiff a dividend of $325.15, being 8 per cent. upon the claim, and again on July 28, 1928, a similar dividend. August 8, 1927, plaintiff tendered to the receiver of the City National his proof of claim in the sum of $3,729.29, being the total amount of said certificate and interest less the payments made by the receiver of the First National Bank. The receiver rejected this claim and proof on the 17th day of August, 1927, and this suit followed.

The Comptroller of the Currency never consented to the consolidation of the City National and the First National Banks, and the statutory requirements for consolidation of national banks have never been complied with. Section 33, title 12, USCA.

The trial court found there was no legal consolidation of the two banks; that the filing of the claim by plaintiff with the receiver of the First National of Huron upon a certificate of deposit issued by the City National and the acceptance of the dividends was not a waiver of any rights he might then have against the City National or its receiver, and did not estop him from asserting such rights against said bank; that the circumstances did not show a novation; and that plaintiff was entitled to have his claim for the balance of his original demand against the City National in the sum of $3,414.14 established. The Court in its written opinion states: "It is disclosed that at the time of this transaction the City National Bank was insolvent and it is perhaps equally clear that the First National was in the same condition. It further appears that in the short space of twenty-four days the said First National Bank closed its doors on the 26th day of January, 1924."

 There is no direct evidence to sustain this conclusion of the court as to the City National. The Comptroller of the Currency found on June 10, 1924, that it was insolvent.

The agreement between plaintiff and Hookway, receiver of the First National, with relation to bringing this case, recites that "said First National Bank suspended operations as insolvent, and it came to light that said City National Bank was actually insolvent at the time of the said transfer of assets." Mr. Farmer, formerly president of the City National, testified that the bank at times had no reserve with the Federal Reserve Bank and at other times did have. There is no doubt it was in grave financial difficulty. During a period of two or three years three assessments had been made against its stockholders aggregating 185 per cent., and the last one was in process of collection at the time the transfer occurred. While it may not clearly appear from the evidence that the City National was technically insolvent at the time of the transaction in question, it does show it was in a financial condition closely approaching insolvency in fact, and was selling its assets to another bank in the attempt to take care of its liabilities. The transaction was not a consolidation under section 33, title 12, USCA. It was not a transfer of stock, but a sale of assets, and was not unusual in the banking world. As far as the First National was concerned, there can be no question that it had the right, in carrying on a general banking business, to take over the assets and assume the liabilities of the City National. It was within the general power of a national bank granted by section 24 (7), title 12, USCA, "to exercise by its board of directors, or duly authorized officers or agents, subject to law, all such incidental powers as shall be necessary to carry on the business of banking."

Whether the City National could sell its assets presents more difficulty. The sale was preliminary to its voluntary liquidation, which, to carry through, required the approval of shareholders owning two-thirds of the stock. Section 181, title 12, chapter 2, USCA. The liquidation of the City National, however, was not permitted to be voluntary. The Comptroller of the Currency took possession of it under section 191 et seq., title 12, USCA, and there was no opportunity to carry out the voluntary liquidation. So far as this record shows, there was no stockholders' confirmation of the sale of assets as there probably would have been had the attempted voluntary liquidation become a finality. In Railway Company v. Allerton, 18 Wall. 233, 21 L. Ed. 902, the court pointed out that the power granted to directors refers to "Ordinary Business Transactions" of the corpora-

tion. It is the duty of directors of a failing corporation to do what they can to conserve the property for the benefit of the creditors. If a concern is in fact a going concern, the board of directors ought not to be permitted to strike it down by selling all its assets. The situation is entirely different when the corporation is not a going concern, and a corporation on the verge of insolvency is not going far.

In George v. Wallace, 135 F. 286, this court pointed out that the expression "usual course of business" has reference to a going concern and not to a concern on the threshold of insolvency. The rule is stated in 3 Thompson on Corporations, § 2429, as follows: "Where the corporation is in failing circumstances, or is in fact insolvent, the directors and managing officers may dispose of all the property, or make an assignment of all the corporate property for the benefit of creditors." See, also, In re Kenwood Ice Company (D. C.) 189 F. 525; In re United Grocery Company (D. C.) 239 F. 1016; In re S & S Manuf'g & Sales Co. (D. C.) 246 F. 1005; Fitts v. Custer Slide Mining & Development Co. (C. C. A.) 266 F. 864; In re De Camp Glass Casket Co. (C. C. A.) 272 F. 558; In re Beaver Cotton Mills (D. C.) 275 F. 498; In re Ann Arbor Mach. Corp. (C. C. A.) 274 F. 24; In re E. T. Russell Co., Inc. (D. C.) 291 F. 809; In re Lone Star Shipbuilding Co. (C. C. A.) 6 F.(2d) 192; Geddes v. Anaconda Copper Mining Company (C. C. A.) 245 F. 225; Winston v. Gordon, 115 Va. 899, 80 S. E. 756.

These cases hold that under general law, in the absence of restrictions national or state prohibiting it, directors of corporations may under certain circumstances mortgage or pledge the corporate assets; may make an assignment for the benefit of creditors; may throw the corporation into bankruptcy. While most of them do not involve national banks, they discuss the general powers of boards of directors under circumstances analogous to those presented here, and we think they are applicable in considering the question of what is the "ordinary business" of the banking corporation. Under the National Banking Act, section 24 (7), title 12, USCA, directors are given "all such incidental powers as shall be necessary to carry on the business of banking." Such business includes the meeting of the bank's liabilities.

We do not think section 181, title 12, US CA, has any application here, as there was no voluntary dissolution of the corporation we are dealing with, and said section is applicable only to a solvent bank. Planten v. National Nassau Bank, 174 App. Div. 254, 160 N. Y. S. 297; Planten v. Earl, 220 N. Y. 677, 116 N. E. 1070.

It has become something of a custom of national banks to take over other banks in failing circumstances, and this has received the approval of the Comptroller of the Currency. If the transaction is a fair one, it is in the public interest. This court in Schofield v. State National Bank of Denver, Colorado, 97 F. 282, held the taking over of the assets and the assumption of liabilities of another bank was within the power granted to directors of national banks by section 24(7), title 12, USCA, supra. In construing a transaction between two national banks in First National Bank v. Harris, 27 F.(2d) 117, 124, this court said: "It was an out and out sale of assets in consideration of an assumption of liability with an accounting over for any surplus realized."

See, also, Wyman v. Wallace, 201 U. S. 230, 26 S. Ct. 495, 50 L. Ed. 738; Hightower v. American National Bank, 263 U. S. 351, 44 S. Ct. 123, 68 L. Ed. 334; American National Bank v. Commercial Nat'l Bank (C. C. A.) 254 F. 249; George et al. v. Wallace (C. C. A.) 135 F. 286; Bishop v. U. S. (C. C. A.) 16 F.(2d) 410; Derscheid v. Andrew (C. C. A.) 34 F.(2d) 884.

Without further discussion, we may say that in our judgment the transaction between the First National and the City National was not, in view of the approaching insolvency of the City National, ultra vires. Because of our holding there was no novation, the question we have been discussing might be superfluous, were it not that in sustaining the decree of the trial court we desire to make clear our position that the transaction between the banks was in our judgment a legal one.

The important concrete question in this case is whether or not there was a novation by which plaintiff accepted the First National as sole debtor and released the City National as a debtor. The trial court found there was no novation.

The Revised Code of South Dakota 1919, section 788, provides "novation is the substitution of a new obligation for an existing one."

Section 789 provides:

"Novation is made:

"1. By the substitution of a new obligation between the same parties, with intent to extinguish the old obligation;

"2. By the substitution of a new debtor in place of the old one, with intent to release the latter; or,

"3. By the substitution of a new creditor in place of the old one, with intent to transfer the rights of the latter to the former."

Section 790 provides: "Novation is made by contract and is subject to all the rules concerning contracts in general."

Section 833 provides: "A voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it so far as the facts are known, or ought to be known to the person accepting."

These provisions of the statutes of South Dakota are in the main merely statements of the general law on the subject. The authorities are clear as to the necessary elements of a novation. They are: (a) A previous valid obligation; (b) the agreement of all the parties to the new contract; (c) the extinguishment of the creditor's claim against the original debtor; (d) the validity of the new obligation.

There is no question here as to the previous valid obligation or the validity of the new. The doubtful question is whether plaintiff intended to discharge the City National from its debt and accept the First National as its debtor. It is a settled proposition that novation is not presumed, and that the burden is on the party alleging and relying thereon to clearly prove it. Intention of the parties is the controlling element. Colley v. Chowchilla National Bank, 200 Cal. 760, 255 P. 188, 52 A. L. R. 569; Crowell v. Moley, 188 Mass. 116, 74 N. E. 329; Drumright State Bank v. Westerheide et al., 124 Okl. 108, 254 P. 80; Tuscaloosa Lumber Co. v. Tropical Paint & Oil Co., 211 Ala. 258, 100 So. 236; Leckie v. Bennett et al., 160 Mo. App. 145, 141 S. W. 706.

The rule as to novation is stated in 29 Cyc. 1130, as follows: "Novation is the substitution by mutual agreement of one debtor or of one creditor for another whereby the old debt is extinguished, or the substitution of a new debt or obligation, for an existing one, which is thereby extinguished. It is a mode of extinguishing one obligation by another, the substitution, not of a new paper or note, but of a new obligation in lieu of an old one, the effect of which is to pay, dissolve or otherwise discharge it."

The theory of novation is expressed by Professor Williston in his work on Contracts, vol. 1, p. 681, as follows: "To work a nova-tion it is not enough that a promise has been made to the original debtor to pay the debt; nor does the assent of the creditor help the matter unless an offer was made to him. The theory of novation is that the new debtor contracts with the old debtor that he will pay the debt, and also to the same effect with the creditor, while the latter agrees to accept the new debtor for the old. A novation is not made by showing that the substituted debtor agreed to pay the debt. It must appear that he agreed with the creditor to do so. Moreover, this agreement must be based on the consideration of the creditor's agreement to look to the new debtor instead of the old. The creditor's assent to hold the new debtor liable is therefore immaterial unless there is assent to give up the original debtor."

A most concise statement is that of 20 R. C. L. p. 366: "The point in every case, then, is, did the parties intend by their arrangement to extinguish the old debt or obligation and rely entirely on the new, or did they intend to keep the old alive and merely accept the new as further security, and this question of intention must be decided from all the circumstances. The existence of such an intention may of course be found although there is nothing positive in the agreement."

In Walker v. Wood et al., 170 Ill. 463, 48 N. E. 919, 920, the court said: "The assent or agreement may be either express or implied, but neither knowledge of the arrangement between the corporation and the firm, nor the partial payment of the debt, nor a demand for the payment, like the filing of the claim against the corporation, nor all combined, necessarily establish such assent or agreement as a legal conclusion."

For a clear statement of the law of novation see Burford v. Hughes, 75 Okl. 150, 182 P. 689. Perhaps the leading case in South Dakota on the subject is Klinkoosten v. Mundt, 36 S. D. 595, 156 N. W. 85, 86, L. R. A. 1918B, 111. There the maker of notes transferred the goods for which they were given to another, who agreed to pay the notes and assume the maker's liability. No notes were made by the transferee, and the court held there was no novation, saying: "In order to constitute novation, there must be either an express or implied agreement on the part of the creditor to substitute the new debtor in place of the original debtor, and also an express or implied agreement to release and discharge the original debtor."

It is not essential that acceptance of the terms of the novation and release of the debtor be shown by express agreement.

Facts and circumstances surrounding the transaction and the subsequent conduct of the parties may show acceptance as clearly as an express agreement. These facts and circumstances must be such that the intention to work a novation may be clearly implied. Stevenson Co. v. Peterson, 163 Wis. 258, 157 N. W. 750; Drumright State Bank v. Westerheide et al., 124 Okl. 108, 254 P. 80; Hopkins et al. v. Warner et al., 109 Cal. 133, 41 P. 868; In re McAusland (D. C.) 235 F. 173; Dunbar v. Steiert, 31 Ariz. 403, 253 P. 1113; Kirtley v. Galbo, 244 Mass. 179, 138 N. E. 326; Illinois Life Ins. Co. v. Benner, 78 Kan. 511, 97 P. 438; Union Central Life Ins. Co. v. Hoyer, 66 Ohio St. 344, 64 N. E. 435; Walker et al. v. Wood et al., 170 Ill. 463, 48 N. E. 919; Henry v. Nubert (Tenn. Ch.) 35 S. W. 444.

The cases establish the following propositions:

(a) The mere assumption of a debt by a third party is not sufficient to constitute novation. Albert Steinfeld & Co. v. Wing Wong, 14 Ariz. 336, 128 P. 354; Leckie v. Bennett et al., 160 Mo. App. 145, 141 S. W. 706; Copeland v. Beard, 217 Ala. 216, 115 So. 389.

(b) There is no novation, unless there is an intent to relinquish the original claim and the original debtor.

In Leckie v. Bennett et al., 160 Mo. App. 145, 141 S. W. 706, the court said at page 710: "A creditor may, without releasing his original debtor, take advantage of the agreement of a third person to pay the debt, in consideration of a transfer of property to him by such original debtor. The original debtor in such case need not be discharged, and may still be held liable for the debt."

(c) All parties must agree to the substitution of the new debt and debtor. The creditor is under no obligation to accept a new debtor. Mount v. Dehaven, 29 Ind. App. 127, 63 N. E. 330; Cole v. Millerton Iron Co., 133 N. Y. 164, 30 N. E. 847, 28 Am. St. Rep. 615.

(d) The intent of the creditor to look to the new debtor is not in itself a release of the old debtor, unless clear from all the circumstances that it was so intended, and the creditor may have a remedy against both old and new debtor. Maddy v. National Life Insurance Co., 156 Minn. 375, 194 N. W. 880; Steinfeld & Co. v. Wing Wong, 14 Ariz. 336, 128 P. 354; Rouse v. Bartholomew, 51 Kan. 425, 32 P. 1088; Davis et al. v. National Bank of Commerce, 45 Neb. 589, 63 N. W. 852; Copeland v. Beard, 217 Ala. 216, 115 So. 389.

On this subject we quote from 1 Williston on Contracts, § 393, p. 736: "Diversity of opinion likewise prevails in regard to the right of a creditor whose debtor has received a promise to pay the debt, to sue both the new promisor and the original debtor. Courts which hold that the original contract is in effect an offer of novation to the creditor naturally hold that if the creditor accepts the promisor as his debtor he releases the original debtor, and on the other hand if he elects to sue the original debtor he thereby rejects the proffered novation and cannot afterwards sue the new promisor. The more common doctrine, however, allows the creditor a right against both the original debtor and the new promisor."

So numerous are the cases on the various elements of novation that some economy of reference must be observed.

What are the circumstances here upon which an argument can be based that plaintiff intended to accept the First National Bank as its sole debtor and release the City National? The following are urged: That he knew of the transaction between the banks and that the assets of the City National had been transferred to the First National and the place of business of the City National closed; that he presented no claim to the City National; that he accepted the benefit of the contract between the two banks; that the First National had accepted creditors of the City National as its creditors; that he could have secured his money on the certificate of deposit by presenting it to the First National; that he filed claim for the amount of the certificate with the First National after it passed into hands of a Receiver; that said proof of claim recites that the First National was indebted to him on the certificate of deposit issued to him by the City National; that he surrendered his old certificate of deposit and received a Receiver's certificate from the First National for the amount due on the City National certificate; that he accepted two dividends thereon from the Receiver of the First National; that he did not present claim to the City National until some three years after it had closed; that he did not bring suit against said bank and its Receiver on his own initiative but under agreement and guarantee with the Receiver of the First National to hold him free from expenses; that up to the time it was suggested to him by Mr. Hookway as he testified he had

not thought of filing a claim against the City National.

When marshaled, these circumstances have considerable persuasive effect, but they are not convincing that plaintiff had any intention to release the City National as a debtor. We doubt if he had any intention in the matter at all except to realize what he could. He testified he did not understand he was forfeiting any right against the City National. The mere knowledge of the arrangement between the two banks on the part of the plaintiff, if he had such knowledge, and his failure to file a claim against the City National, does not amount to a release of that bank. There is no reason why he could not accept whatever benefit there might come from the assumption of the City National's debts by the First National and establish a claim against the original debtor for any balance, provided he had not released it. That he did not attempt to impose a trust in favor of the City National Creditors on the assets transferred to the First National does not prevent him pursuing the remedy here undertaken. There was nothing in the contract between the two banks which attempted to provide any release as to plaintiff's claim. The City National never attempted to be released from its liability. Its identity was not destroyed, although in receivership. Plaintiff was not asked to accept the First National as a substitute. No offer was made to him involving the release of the City National. He was no party to the consideration by which the First National's assumption of liability was made binding. If the City National never asked to be relieved of its liability, and plaintiff was not asked to release it, just how he could be held to have assented to a release of the City National is puzzling. In Illinois Car & Equipment Company v. Linstroth Wagon Company (C. C. A.) 112 F. 737, the court said (page 741): "There is no evidence that the Car Company ever sought to be released from its liability, or that the Wagon Company was ever asked to accept the Southern Company as a substitute." This seems to fit the situation here.

Had plaintiff not filed his claim with the receiver of the First National, attaching thereto the certificate of deposit in the City National, and receiving a receiver's certificate therefor, no claim could have been made of any novation. Receiving two dividends thereon is also important. These are the strongest circumstances in the case bearing on defendant's theory.

The question of the taking a new note being a discharge of the debt is referred to in Klinkoosten v. Mundt, supra, where the court said: "In most of the adjudicated cases where it has been held that implied novation had occurred there were circumstances such as the delivery to the original debtor of his notes and new notes taken in place thereof, or other circumstances, indicating an intention on the part of the creditor to accept the new debtor in place of the old, and to release and discharge the obligation as against the original debtor."

In Regester v. Dodge (C. C.) 6 F. 6, 11, the court said: "The next circumstance deserving attention is of more significance. Indeed, it is one that in some of the cases has been considered to be of itself conclusive. This circumstance is that when the existence of these deposits was disclosed in the bankruptcy proceeding of the new firm, the creditor, knowing that he was dealing in respect to the assets of a new firm which had agreed to assume the debts of the old firm, for the purpose of extinguishing the liability of the old firm, adopted the new firm as his debtors for this very debt. This he did in the most formal way, by proving the deposit made by David Regester, with the old firm, as a debt of the new firm. The proof was not of a liability by reason of property or money received by the new firm, to be applied to the discharge of debts of the old firm, but the original deposits were proved as a ground of liability. This adoption of the new firm as the debtors, coupled with the omission during the life-time of the retired partner to indicate, by word or deed, the existence of a liability on his part for the debt in question, and coupled with the lapse of time that occurred before the liability of the retired partner's estate was asserted, appears to me to be sufficient, according to the requirements of the cases already cited, to justify the inference that the new firm was adopted as debtor with the intention that the liability of the firm was to stand in place of the liability of the old."

The court indicated that slight circumstances under the facts there appearing were sufficient to justify finding intent of creditor to release old debtor, saying, "A very little will do." It has been held in some jurisdictions that the taking of a new note from a third person discharges the debtor, but the general rule is as stated in 20 R. C. L. p. 365: "Generally, unless it is otherwise specially agreed, if the holder of a promissory note takes a new note for the original debt, that is prima facie a conditional payment

only—that is, the original debt will be extinguished on the payment of the substituted note and there is not a novation. * * * But if it is agreed between the parties, as it well may be, that the substituted note shall be an absolute payment of the original debt or note, then it will operate as an absolute satisfaction and extinguishment thereof and a novation results. * * * The rule applicable to promissory notes applies to certificates of deposit, and therefore the renewal of bank deposit certificates does not operate as a novation of the original indebtedness."

■ In Dunn v. Bank of Union, 74 West Va. 594, 82 S. E. 758, L. R. A. 1915B, 168, it was held that renewal of a bank deposit certificate does not operate as novation of the original indebtedness. In Mount v. Dehaven, 29 Ind. App. 127, 63 N. E. 330, it was held that the surrender of the original note to the third person by the creditor did not discharge the debtor. See, also, Maddy v. National Life Insurance Co., 156 Minn. 375, 194 N. W. 880; Montgomery Bank v. Jackson, 190 Ala. 411, 67 So. 235; Lutz v. Williams, 79 W. Va. 609, 91 S. E. 460, L. R. A. 1918A, 76; Hayward v. Burke, 151 Ill. 121, 37 N. E. 846. It is to be noted in the case at bar that the certificate of deposit was not surrendered to the original debtor as was the case with the note in the Klinkoosten Case, but was surrendered to the receiver of the First National, who was not an agent of the debtor. We do not think it can be assumed that plaintiff intended to surrender his rights against the City National by the surrender of possession of the certificate. It was merely evidence of the debt. Surrender of a certificate of deposit does not in itself cancel the debt. There is no reason why plaintiff could not pursue his remedy against either or both. Maddy v. National Life Insurance Company, supra. The mere intention to look to the First National on its promise to pay the debts of the First National would not result in a release of the City National from its obligation. It is probably true that plaintiff had no intention to enforce his claim against the City National, until it was suggested to him by Receiver Hookway, but that is not assenting to its release. He testified that he never intended to release the City National. Mere silence as to claim cannot be construed to constitute a release thereof. The fact that no claim was made against the City National for some three years and was not filed or offered for filing until the suggestion was made by the receiver of the First National Bank and the suit arranged for, expenses to be borne by others, is of course important as a circumstance bearing on intent. Other creditors of the City National may have been willing to pay the expenses of a test case, the purpose of which was eventually to bring about an assessment against the stockholders of the City National. We see no reason why this should affect the validity of the plaintiff's claim.

■ Appellant argues that plaintiff had accepted benefits under the transaction by receiving dividends and consequently under the South Dakota statute consented to all the obligations of the contract so far as the facts were known to him. There is nothing here to show that plaintiff had any particular knowledge as to details of the agreement between the banks. He was not familiar with exactly what had taken place. He transacted no business with the First National after it took over the assets and assumed the liabilities of the City National, and it was only twenty-four days thereafter until that bank went into the hands of a receiver. He may not have known that liability could be enforced against stockholders of the City National even if its assets were gone, or that he might, as a creditor, have followed the assets as a trust fund. Plaintiff's testimony shows he had little understanding of his rights. Just what substantial benefit to him would result from giving up all claims against the stockholders of the City National by accepting the two dividends from the receiver of the First National is not apparent. It is doubtful if the First National had any intention to pay all the obligations of the City National regardless of defenses that might be available by the City National to those obligations, and, if it did not, there would be no novation.

In many cases cited by the appellant the question is as to whether the evidence entitled the case to go to the jury.

In Lemon v. Little, 21 S. D. 628, 114 N. W. 1001, it was held that the case should have gone to the jury on the question of novation. Same proposition was in Drumright State Bank v. Westerheide et al., 124 Okl. 108, 254 P. 80; Illinois Life Insurance Company v. Benner, 78 Kan. 511, 97 P. 438. In Iowa Bridge Company v. Commissioner of Internal Revenue (C. C. A.) 39 F.(2d) 777, the facts bear no analogy to those in the case at bar. The circumstances in Stevenson Company v. Peterson, 163 Wis. 258, 157 N. W. 750, are much stronger than those here. Kirtley v. Galbo Company, Inc., 244 Mass. 179, 138 N.

E. 326, presents a case of real novation; likewise Dunbar v. Steiert, 31 Ariz. 403, 253 P. 1113. Gillett v. Ivory, 173 Mich. 444, 139 N. W. 53, is undoubtedly an authority in favor of defendant's position, although there was an estoppel element involved. The same Michigan Court said in Harrington-Wiard Company v. Blomstrom Manufacturing Company, 166 Mich. 276, 131 N. W. 559, 563: "One may accept money or performance of a contract from a third party without releasing the original obligor."

The question of whether there was an intention to accept the First National Bank alone in place of the City National Bank and to release the City National is one of fact, and there is evidence here on both sides of the proposition. The burden of proof was upon defendant to clearly establish the novation. It has not done so. The circumstances do not show in our opinion that plaintiff ever assented to the release of the old debtor and the extinguishment of the old debt. The stockholders of the City National should not escape liability for an assessment by reason of the fact that the directors, in view of approaching insolvency, transferred the assets of the bank over to another bank and took a contract to be relieved of liability, unless the creditors clearly assented thereto. The result of this proceeding, if it were held there was a complete novation, would be to place the stockholders of the City National Bank in a more favorable attitude than the statutes contemplate or the situation warrants. The decision and decree of the trial court leaves them in the same position as if the assets had not been transferred. We are satisfied the decree of the trial court must be affirmed, and it is so ordered.

Affirmed.