## HOUSTON v. DRAKE.
### No. 226.

District Court, D. Arizona.
Feb. 25, 1937.

694

Knapp, Boyle & Thompson, of Tucson, Ariz., for plaintiff.

Darnell, Pattee & Robinson, of Tucson, Ariz., for defendant.

SAMES, District Judge.

J. F. Houston, as liquidating agent of the Consolidated National Bank of Tucson, Ariz., a national banking association in process of voluntary liquidation, seeks to avoid the obligation of a 99-year lease of lot 1, block 209, of the city of Tucson assigned to said bank by the Arizona National Bank of Tucson soon after the former bank took over the assets and assumed the liabilities of the latter bank.

The plaintiff contends that the lease is ultra vires said bank and that as said agent he rejected said lease and never assumed the same; that the · claims presented by the defendant for rent in arrears, taxes, and repairs to the premises are invalid; that the amounts claimed for future rents under the lease are not yet due and may never become due and are too remote, uncertain, and speculative to form the basis of any claims either as rent due under the lease or for damages for breach thereof; that no part of said claims can be ascertained or enforced until the expiration of the term of the lease, and that the defendant has no valid or subsisting provable claim against the trust fund of said The Consolidated National Bank in the hands of said liquidating agent; that the funds held in trust for the creditors, exclusive of the potential liability of the stockholders, amount to $79,058.

Plaintiff further contends that the provision for voluntary liquidation of national banking associations (title 12 U.S.C.A. § 181) was in effect on the date of the execution of the lease and entered into and became a part of said contract of lease and that voluntary liquidation of the association cannot be defeated or delayed by the requirement of performance by the lessee of the obligations thereof throughout the unexpired term of the lease.

The defendant asks that the lease be sustained as valid and binding upon said The Consolidated National Bank and that the claims set forth in her answer for amounts expended by her for repairs and taxes in default of the payment thereof by the lessee as required in the lease, and for all rent in arrears be allowed and paid, and that the trust fund in the hands of said agent be held subject to the rental accruing throughout the unexpired term of the lease.

The Arizona National Bank, lessee of the defendant Hilda E. Drake, owner of said premises, occupied the same, conducting its banking business thereon from the time of the execution of the lease in March, 1920, until the transfer of its assets to The Consolidated National Bank in February, 1925. During all of said time a portion of the premises was occupied by the Tucson Realty & Trust Company, the capital stock of which company stood in the names of the officers or stockholders of said Arizona National Bank. In February, 1925, The Consolidated National Bank also took over all of the assets and the outstanding capital stock of said trust company on the assumption by said bank of the liabilities of the Arizona National Bank and the ordinary current liabilities of the trust company and the issuance to said trust company of 150 shares of the capital stock of The Consolidated National Bank. It appears from the minutes of the board of directors of the trust company that its capital stock transferred to The Consolidated National Bank was reissued to said bank. The affairs of the trust company were thereafter supervised and directed by the officers of said bank.

For about a year, in 1928 and 1929, while a new building on the corner directly east and across the street from said premises was under construction, the business of The Consolidated National Bank was conducted on said leased premises, during which time the Tucson Realty & Trust Company maintained its office in the rear of the banking room occupied by said bank. On the removal of the bank to the new building in which it has since conducted its banking house until it discontinued business and was succeeded by

the Valley National Bank, the trust company reoccupied and has since continued to occupy the main portion of the leased premises under lease from The Consolidated National Bank.

The minutes of The Consolidated National Bank show that in 1929 the bank sold the lease in question and transferred the stock of the Tucson Realty & Trust Company acquired by the bank to Mr. Stanley Williamson on condition that the bank retain the right to vote the stock until the agreed price for the same be fully paid; and that the profits made by the company be applied on the purchase price for said stock. Mr. Williamson gave his notes to the bank for the agreed amount to be paid for the lease and obtained possession of the premises and the right to the income therefrom. The bank agreed to execute an assignment of the lease on payment in full of the notes, the last of which matured within two years from the date of the sale. The outcome of this transaction is not clear from the evidence in the case. However, in October, 1933, The Consolidated National Bank leased the premises for five years to the trust company now occupying the same. Tenants of store apartments on said premises paid their rent to The Consolidated National Bank after the assignment of the lease by the Arizona National Bank, and The Consolidated National Bank made monthly payments as specified in the lease, as modified, to the lessor, up to the 1st day of April, 1935. The bank has failed to make payments for repairs required by the city building authorities, as provided in the lease, accruing since said 1st day of April, 1935, and up to the date of the filing of this suit.

On his appointment the liquidating agent promptly notified the defendant of his repudiation of the lease and the assignment thereof to said The Consolidated National Bank as ultra vires thereof, and instituted this suit for relief from the obligations of the lease in order that the liquidation of the bank may be speedily accomplished.

No question is raised as to the validity of the lease on its inception nor until the assignment thereof to The Consolidated National Bank.

■ It was not beyond the power of either bank to enter into the lease because of the long term granted, Brown v. Schleier (C.C.A.) 118 F. 981, 1d., 194 U.S.

18, 24 S.Ct. 558, 48 L.Ed. 857, nor because the term extended beyond the limitations of the charter of either bank, Weeks v. International Trust Co., (C.C.A.) 125 F. 370.

■ The minutes of the meeting of the board of directors of The Consolidated National Bank of date February 9, 1929, recite the contract entered into by the two banks, from which it appears that the assets of the Arizona National Bank were to be transferred to The Consolidated National Bank, and that the latter assume the indebtedness of the former; that a liquidation account be established in which were to be credited the proceeds from assets realized upon or accepted by The Consolidated National Bank as having been realized upon for the principal amount thereof, to be applied in payment of the liabilities of the Arizona National Bank assumed by The Consolidated; that all amounts realized from the principal of said assets in excess of an amount sufficient to repay The Consolidated National Bank for said liabilities assumed by it, less the sum of $50,000 to be absorbed by The Consolidated, and any assets then remaining undisposed of were to be returned to the Arizona National Bank; that said deficit between the amount realized by such liquidation and the liabilities assumed by The Consolidated was to be paid by the Arizona National to The Consolidated National Bank, and that in the event of the failure of the Arizona National to make such payment, all of said assets were to remain and be the property of The Consolidated National Bank; and that if such deficit were paid all of the assets remaining in the liquidation account were to be returned to and become the property of the Arizona National Bank.

It is evident that the transaction did not constitute a consolidation of the two banks, as may be effected under the provisions of sections 1, 2, 40 Stat. 1043, 1044, title 12 U.S.C.A. §§ 33 and note, 34, since no compliance in entirety with the statutory provisions therefor is shown. Under said act, "all the rights, franchises, and interests of the bank so consolidated in and to every species of property * * * shall be deemed to be transferred to and vested in such national bank into which it is consolidated * * * and the said consolidated bank shall hold and enjoy the same * * * in the same manner and to the same extent as was held and enjoyed

696

by the national bank so consolidated therewith."

A purchase by a national bank of all of the assets of another bank, state or national, on the assumption of the debts and obligations of the latter is upheld in decisions of federal courts as within the incidental powers of national banking associations under the provisions of Rev.St. § 5136 as amended, title 12 U.S.C.A. § 24, subd. 7. Schofield v. State Nat'l Bank (C.C.A.) 97 F. 282; City Nat'l Bank of Huron S. D. v. Fuller (C.C.A.) 52 F.(2d) 870, 79 A.L.R. 71; Wannamaker v. Edisto Nat'l Bank of Orangeburg et al. (C.C.A.) 62 F.(2d) 696.

However, in the instant case the assets of the Arizona National Bank, as shown by the contract for the transfer, appear to have been taken over to secure The Consolidated National in its assumption of the indebtedness of the Arizona National, and if more than sufficient to secure The Consolidated in its payments in discharge of the debts of the Arizona National, the excess thereof was to be returned to the Arizona National. While the assets of the latter were transferred to The Consolidated for liquidation, the right to recover the same was retained by the Arizona National on condition that all of said assets were not exhausted in refunding advancements made by The Consolidated in discharging the debts of the Arizona National Bank.

By the terms of the agreement between the two banks The Consolidated was given the option to take over the Drake lease as an asset of said Arizona National Bank. Pursuant to said agreement The Consolidated National Bank accepted said lease. On a modification of the lease reducing the amount of the monthly payments of rent to be made during a portion of the demised period, The Consolidated, the Arizona National Bank, and the defendant executed an assignment of the lease to The Consolidated National Bank.

From the terms of the contract as disclosed by the minutes it is evident that the resulting relations between the two banks were not those of a consolidation or of a purchaser and seller, but that the assignment of the assets of the Arizona National Bank was made to secure the Consolidated in discharging the debts of the Arizona National assumed by The Consolidated and that the transaction in fact resulted in the relation of debtor and creditor and pledgor and pledgee. A contract of similar provisions and obligations was so interpreted by the Supreme Court of the United States. Hightower et al. v. American National Bank of Macon, Ga., 263 U.S. 351, 44 S.Ct. 123, 68 L.Ed. 334.

As disclosed by the contract, the assets of the Arizona National Bank, including the Drake lease, were acquired by The Consolidated National Bank within the provisions of Rev.St. § 5137, title 12 U.S. C.A. § 29 and note, as security for the indebtedness of the Arizona National Bank assumed by The Consolidated.

Since it was within the power of The Consolidated National Bank to acquire and assume the lease as property and an asset of the Arizona National Bank upon said transfer by the Arizona National of all of its assets to The Consolidated National Bank, the relationship of the Tucson Realty & Trust Company to The Consolidated National Bank, and the occupancy of said premises by the trust company are immaterial.

Title 12 U.S.C.A. § 181 authorizing voluntary liquidation of a national banking association requires the committee or agent to conduct the liquidation in accordance with law, and under the supervision of the board of directors; to render annual reports to the Comptroller of the Currency until the liquidation is completed, and to the shareholders at their annual meeting. By a majority vote of the shareholders the committee or agent may be removed and others appointed. The Comptroller may examine into the affairs of the bank until all claims of creditors have been satisfied. The bank continues to exist during the process of liquidation, capable of suing and being sued. Authorities 12 U.S.C.A. § 181, note 11. Voluntary liquidation as provided in the act is only available to a solvent national banking association. City National Bank of Huron, S. D. v. Fuller, supra.

The statute makes no provision for dissolving executory contracts and terminating liability thereon, nor does it provide for a ratable dividend on claims against the bank, provision for which is made in involuntary liquidation. 12 U.S. C.A. § 194. The voluntary dissolution of a solvent corporation gives no relief from liability upon existing contracts whether executed or executory which must be sat-

isfied before its assets can be diverted. Okmulgee Window Glass Co. v. Frink (C.C.A.) 260 F. 159; Wyoming-Indiana Oil & Gas Co. v. Weston, et al., 43 Wyo. 526, 7 P.(2d) 206, 80 A.L.R. 1037.

The lease is valid and binding upon the lessor for the full period granted therein, during which time the lessor may not recover possession of the leased premises except on the default or nonperformance of the lessee, notwithstanding any advantage the lessor might gain by avoidance of the lease and the recovery of possession. A construction of title 12 U.S.C.A. § 181 which would in voluntary liquidation in effect release a solvent debtor banking association from its obligations of contract under which the other party thereto is held bound would render the contract unilateral and inequitable and doubtless unenforceable against either of the parties thereto.

This suit was brought to determine the validity of the lease in question as incidental to winding up the affairs of a national banking association. 28 U.S.C.A. § 41, subd. 16; Citizens' Nat'l Bank in Waxahachie v. Bank (D.C.) 9 F.Supp. 513. Jurisdiction having attached, the claims asserted by the defendant in her answer for rent in arrears and expenses incurred by her under the provisions of the lease, at the time of the institution of the suit, may be entertained and determined. Zenith Carburetor Co. v. Stromberg Motor Devices Co. (C.C.A.) 270 F. 421; Louisville & Nashville Ry. Co. v. Greene, 244 U.S. 522, 37 S.Ct. 683, 61 L.Ed. 1291, Ann.Cas.1917E, 97; Hopkins v. So. Cal. Tel. Co., 275 U.S. 393, 48 S.Ct. 180, 72 L.Ed. 329.

The lease is conditioned that upon default in payment of the monthly amount of rent as therein specified the lessor may declare the lease at an end and recover possession of said premises. No provision appears in the lease for liquidated damages in the event of the default of the lessee in the payments to be made thereunder or in the event of bankruptcy, insolvency, or voluntary or involuntary liquidation of the lessee. There being no such provision, the amount of such damages cannot be determined until the expiration of the full term demised, and claims for damages for such breach are not now allowable. First Nat'l Bank of Chicago v. First Nat'l Bank of Wheaton (C.C.A.) 78 F.(2d) 502; Brown v. Schleier (C.C.A.) 118 F. 981.

The lessor stands on the lease and has not re-entered the premises. Where a lessor does not elect to re-enter on breach of the lease by the lessee, the lessor is entitled to recover the monthly rent as the same becomes due. Section 4325, Rev.Code Arizona, 1928.

The lessor is limited in this suit to recovery of the rent due and in arrears and the amounts expended by her in payment of items as specified in the lease accrued and incurred at the time of the institution of the suit. 36 C.J., p. 456, § 1359.

The avoidance of the lease as prayed by the plaintiff will be denied. The defendant is entitled to recover the amount of the monthly rentals accrued and unpaid and expenses incurred by defendant under the terms of the lease at the time of the institution of this suit.

Findings and decree may be submitted accordingly.